CONSOLIDATED FISHERIES COMPANY, defendant be'ow appellant, v. JAMES O. MARSHALL, Treasurer of the Town of Lewes, plaintiff below respondent.

(*May* 6, 1943.)

LAYTON, C. J., and TERRY, J., sitting.

*James M. Tunnell, Jr.,* for the plaintiff below.

*Caleb R. Layton, 3d,* (of Hastings, Stockly and Layton) for the defendant below.

Superior Court for Sussex County, February Term, 1943.

LAYTON, Chief Justice:

The defendant corporation holds under a lease from Commissioners of Lewes, a municipal corporation, certain public or vacant lands adjacent to the corporate limits of the Town of Lewes at a yearly rental of $1312.00, on which lands, during the year 1942, were certain buildings and improvements. Under the authority of Chapter 170, Volume 43, Delaware Laws, entitled "An Act to Re-Incorporate The Town Of Lewes," the buildings and improvements were assessed for taxation in the sum of $20,000.00, and a tax of one percent was levied thereon, becoming due and payable on April 1, 1942. The defendant refused to pay the tax. The plaintiff, treasurer of the Town, sued before a Justice of the Peace to recover the amount of the tax so assessed and levied, and recovered judgment in the sum of $200.00. The defendant appealed and, by agreement, the cause was submitted to the Court for decision on a stipulation of facts.

For many years the Town of Lewes, by legislative authority, has been vested with jurisdiction over certain state owned lands within and without the corporate limits of the

Town. In 1871 jurisdiction over all the public and vacant lands lying within the corporate limits of the Town was vested in the Town, and authority was given to lease portions of such lands to persons who would agree to improve them upon such time and terms as was deemed proper for the benefit of the Town. Buildings and improvements put on such lands enclosed without the Town's permission were declared forfeited to the Town. Authority was given to assess a ground rent at a certain amount on persons having buildings on any of the public lands, and to assess persons having enclosed or claiming the use or privilege of any of the lands a tax not exceeding six percent of the assessed value of the lot or lots so enclosed or claimed. Ch. 114, Vol. 14, Del. Laws. By Chapter 536 of the same volume, all the public and vacant lands contiguous to but outside the corporate limits of the Town and fronting on the Bay to the extent of one mile along the beach were vested in the Town with the same jurisdiction and authority over them, and with the same rights and powers in relation to them as were conferred in regard to public and vacant lands within the corporate limits of the Town. In 1885, the Town was authorized to assess any person occupying, enclosing or claiming the use or privileges of any of the public lands within the limits of or vested in the Town and not held under a lease from the Commissioners at a certain rent, a tax not exceeding six percent of the assessed actual value of the land so enclosed, occupied or claimed, and two percent of the actual value of the improvements thereon. With respect to persons holding public land under lease from the commissioners at a certain rent the Town was authorized to assess a tax against them at the same rate on the value thereof and improvements thereon, after deducting the value of the ground at the period of reservation of the rent, the value to be estimated at one hundred dollars for every six dollars reserved, and so for a greater or less sum of rent. Ch. 563, Vol. 17, Del. Laws.

In 1907, the Town of Lewes was re-incorporated, (Ch. 220, Volume 24, Del. Laws). Section 7 of the Act, in part, reads:

"All the public and vacant lands lying within the corporate limits of said town of Lewes, and all the public or vacant lands contiguous to but outside the corporate limits of said town and fronting on the Bay between the point of Cape Hen'open on the south and Veasey's Inlet on the north, shall be vested in the Commissioners of Lewes and the said Commissioners shall have jurisdiction over the same; and all ordinances adopted by the said Commissioners shall have the same force over and upon the said public and vacant lands as within the corporate limits of said town, and the said Commissioners are hereby authorized to lease, to persons who will improve or agree to improve the same, such portions of said public lands for such time and upon such terms as they, the said Commissioners, may deem proper for the interest and benefit of said town; and if hereafter any person or persons shall, without the permission and consent of the said Commissioners, build upon any of said public lands, he, she or they shall forfeit such improvements or buildings to the said town; and the said Commissioners may assess or levy upon any person or persons occupying, enclosing or claiming the uses or privileges of any of the said public lands vested as aforesaid in the said Commissioners and not held under a lease from said Commissioners at a certain rent, without the sanction of any act of the Legislature of this State or law of the United States, a tax, not exceeding six per cent of the assessed actual value of the lands so enclosed, occupied or claimed, and two per cent of the actual value of the improvements thereon.

"A tax upon persons holding such public lands under a lease from said Commissioners at a certain rent, may be assessed or levied at the same rate at the assessed value thereof and the value of the improvements thereon, after deduct-

ing the value of the ground at the period of reservation of the rent, which value shall be estimated at one hundred dollars for every six dollars reserved, and so for a greater or less amount of rent."

The Town of Lewes was re-incorporated in 1941 by Chapter 170, Volume 43, Delaware Laws. By the first para- graph of Section 9 of the Act, the same general jurisdiction and authority over public and vacant lands within and with- out the corporate limits of the Town were confirmed. The second paragraph of the Section reads as follows:

"The said Commissioners may assess or levy upon any person or persons leasing, occupying, enclosing, or claiming the uses or privileges of any of the said public lands vested as aforesaid in the said Commissioners, and not held under a lease from said Commissioners at a certain rent which ex- pressly includes taxes, and not held by virtue of the provi- sions of any act of the Legislature of this State otherwise providing, nor any law of the United States otherwise pro- viding, a tax, not exceeding six per cent of the assessed actual value of the lands so leased, enclosed, occupied or claimed, and two per cent of the actual value of the improve- ments thereon."

Section 14 of the Act bears the heading, "Assessment Of Taxes." The Board of assessment is required annually to make an assessment of all the real estate within the town, "and of all the public or vacant lands within or without the corporate limits * * * which shall be occupied, enclosed, or the use or privilege thereof claimed by any person or per- sons, and of the improvements on said public or vacant lands;" and a duplicate is required to be delivered to the Commissioners "containing the names of all persons assess- ed and the amount of their assessment, distinguishing the real and personal assessment of each, and the assessment of those occupying, enclosing or claiming the use or privi-

lege of any of the public or vacant lands aforesaid, and the improvements thereon."

Section 13 of the Act is headed, "Commissioners Power To Levy And Collect Taxes." A tax is authorized upon residents of the Town, and upon all the real estate within the town, not expressly exempted, "and upon all the public or vacant land within or without the limits of [the] town * * * which shall be occupied, enclosed, or the use or privilege thereof claimed by any person or persons, and upon the improvements on such public or vacant land."

Section 9 of the Act now in force is in substitution for Section 7 of the former Act. The first paragraph is in the same language to the point where authority to levy taxes is granted. The second paragraph is the same as the latter part of the first paragraph of Section 7 with these changes: the word "leasing" is interposed before the word "occupying," and the phrase "which expressly includes taxes" appears after the word "rent." The second paragraph of Section 7 prescribing the formula for the deduction from the assessment of leased lands is entirely omitted. But the specific authority conferred by Sections 13 and 14 to assess and levy taxes on public and vacant lands vested in the Town is confined to such lands as are occupied, enclosed, or the use or privilege thereof claimed, and the improvements thereon.

It is contended that the special authority conferred by these Sections is in conflict with the general authority granted by Section 9, and it is upon the conflict that the defendant bases its defense. It insists that no authority is given to the Town to tax public and vacant lands, or improvements thereon, held under a demise from the Town at a certain rent; and, at the least, the taxing power, as it relates to public lands so held is so doubtful and ambiguous, the language so contradictory, and so fairly susceptible to more than one interpretation, that the doubt must be resolved in favor of the taxable. *State v. R. H. Perry & Co.,* 3 *W. W. Harr.* (33

*Del.*) 530, 140 A. 474; *Highfield v. Delaware Trust Co.*, 4 *W. W. Harr.* (34 *Del.*) 290, 152 A. 117, affirmed 4 *W. W. Harr.* (34 *Del.*) 306, 152 A. 124; *State v. Bethlehem Steel Corporation*, 7 *W. W. Harr.* (37 *Del.*) 441, 184 A. 873; *Highfield v. Delaware Trust Co.*, 8 *W. W. Harr.* (38 *Del.*) 116, 188 A. 919.

The plaintiff, in reply, is content in saying that the word "occupy" is sufficiently broad in scope as to refer to and include all people who hold public and vacant land under a lease from the town.

In the several acts incorporating the Town of Lewes the Legislature has been careful to distinguish between persons holding public lands under a lease from the Town at a certain rent, and persons occupying, enclosing or claiming them but not as lessees, that is, between those persons recognizing and those denying the authority of the Town. However broad the general significance of the word "occupy," the Legislature has always made use of the word in contradiction to the holding of public lands under a formal lease from the Town; and if the authority to tax public and vacant lands vested in the Town and held under a lease from it at a certain rent is to be upheld, a more acceptable approach to the question must be found.

The question, generally, is one of statutory construction; and, precisely, whether the apparent conflict in the several Sections of the Act can be reconciled.

The Legislature has the inherent power to levy taxes, except as restrained by the Constitution. Where a municipality or other local authority atempts to exercise the power of taxation, it must show the legislative warrant for the exercise of the power in the words of the grant. The grant of power will be strictly construed, for the reasonable presumption is that the State has granted in clear and unmistakable terms all that it intended to grant. The general

principle is well settled that revenue laws are not to be so construed as to extend their provisions beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case of doubt, therefore, such statutes are construed most strongly against the taxing power, and in favor of the citizen, because burdens are not to be imposed, or presumed to be imposed, beyond what the statutes expressly and clearly import. *United States v. Wigglesworth,* Fed. Cas. No. 16,690, 2 Story 369.

 Apart from this consideration, the rules governing the construction of tax statutes are the same which govern any other statute; and by strict construction is not meant such construction as will defeat the legislative purpose. The primary rule of construction, is to arrive at the intention of the legislature as expressed by the language used; and that intention, when clearly ascertainable, will prevail over the literal sense and precise letter of the statute. *Darling Apartment Co. v. Springer,* (Del. Sup.) 22 A. 2d 397, 137 A. L. R. 803; *Nigro v. Flinn,* 8 *W. W. Harr.* (38 *Del.*) 368, 192 A. 685.

██ Where one part of an act is in clear conflict with another part, and the repugnancy is such that no rule of construction will serve to reconcile the conflict, the statute must either be declared inoperative and void in respect of the matter in conflict, *Jones v. Lawson,* 143 Ark. 83, 220 S. W. 311; *State v. Mulhern,* 74 Ohio St. 363, 78 N. E. 507, 6 Ann. Cas. 856; or an aribitrary rule of construction must be applied by which the last part of the statute in order of arrangement will be held to prevail. *Sutherland Stat. Cons.,* 2nd Ed., § 349; 59 C. J. 999. This is said to be the general rule. Notes, 6 Ann. Cas. 860; 19 Ann. Cas. 149; *United States v. Updike,* (D. C.) 25 F. 2d 746. There seems to be, however, no satisfactory basis for the rule. It springs rather from the necessity of some rule in peculiar cases than from sound reason; and,

in any event, it is subject to the primary rule that the statute must be read as a whole to find, if possible, the legislative intent.

In Sections 13 and 14 of the Act there is no reference whatever to the assessment and taxation of public lands held under a lease from the Town at a certain rent. These Sections, in this respect, are clearly in conflict with the provisions of Section 9; and are, of course, later in the order of arrangement. If the general rule is to be applied, the defendant's lands are not subject to taxation for municipal purposes. But a grant of exemption from taxation is never presumed. Sections 13 and 14 must be construed in connection with Section 9; and the established policy of the legislature as disclosed by the general course of legislation may properly be considered. Certainly since 1885 persons holding public lands under a lease from the Town at a certain rent have been subject to taxation in respect of the lands so held, and the improvements thereon. Until the present Act became effective a certain indulgence was given such persons by requiring a deduction from the assessment to be made under the formula prescribed in the earlier acts. See *Marshall v. Consolidated Fisheries Co.*, 3 *Terry* (42 *Del.*) 106, 28 A. 2d 247. No reason has been advanced why lessees of these public lands vested in the Town should be relieved from taxation; and no clear purpose so to relieve them is revealed by the present Act. On the contrary, by comparing the provisions of Section 9 of the Act now in force with the provisions of Section 7 of the Act which is superseded, the Legislature has evidenced an intention to do away with the indulgence theretofore extended to lessees of public lands at a certain rent and to tax alike all holders of such lands. The change of phraseology demonstrates the legislative intent to change the existing law, and the reasonable presumption is that the intention was to change the Act in all of the particulars touching which a material change is found in the existing language. *United States v. Bashaw* (8 Cir.) 50 F. 749, 754.

Reading the second paragraph of Section 9 with Sections 13 and 14, as must be done, having regard for the rule that every word and phrase must be given effect, if possible, and mindful of the uniform course of legislation with respect to the taxation of public lands held under a lease from the Town at a certain rent, it is reasonably clear that the legislative purpose was to subject to like assessment and taxation holders of public and vacant lands vested in the Town, whether held under a lease from the Town at a certain rent, or occupied, enclosed or claimed adversely to the authority of the Town, save where, in the case of lands demised by the Town at a certain rent, the taxes should be expressly included in the rent reserved under the lease.

The lease from the Town to the defendant has been pleaded. By its provisions the taxes are not included in the rent. No question of abatement of taxation by contract has been raised. So far as the record discloses the taxes for the year 1942 were properly assessed and levied; and the judgment must be for the plaintiff.