CITY OF BAYONNE, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT, v. MURPHY & PERRETT CO., ET ALS., DEFENDANTS-RESPONDENTS.

Argued May 14, 1951—Decided June 11, 1951.

300

*Mr. Alfred Brenner* argued the cause for the appellant.

*Mr. Thomas J. Armstrong* argued the cause for the respondents (*Messrs. Armstrong & Mullen,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is a civil action in which both the plaintiff City of Bayonne, a municipal corporation of this State, and the defendants, motorbus operators, appeal from a judgment of the Hudson County Court. The appeals were addressed to the Appellate Division of the Superior Court and prior to hearing there were certified to us upon our own motion.

Suit was instituted below by the City of Bayonne against the 30 defendants, all motorbus operators, to recover the city's proportionate share of gross receipts taxes, together with statutory penalties, *viz.,* $100 for each offense, for failure to file monthly statements showing the gross receipts and failure to make payment of the taxes as the same became due. The statutory authority for both taxes and penalties is hereinafter discussed. The series of events culminating in this suit appears to have had its inception during the winter of 1928. The facts were stipulated for a trial to the court without a jury, and are briefly recited here. Prior to 1928 no motor buses on the Bergen Avenue Bus Route in Jersey City, New Jersey, and particularly none operated by the defendants in the suit, did any business in the City of Bayonne. During the winter of 1928 the various operators on the Bergen Avenue route determined that buses on that route could conveniently commence their northbound trip from the northeast corner of Broadway and 54th Street in the City of Bayonne. The portion of the entire route, as so extended, lying within the City of Bayonne has been determined to be one sixty-fifth part thereof. The president and secretary of the Bergen Avenue Bus Owners Association acting on behalf of all the defendants called upon the supervisor of bus transportation of the City of Bayonne to arrange for payment

of the proportionate part of the five per cent gross receipts tax which would begin to be due the plaintiff city when the route became extended into that municipality. The supervisor was in charge of the operation of all motor buses operating within the territorial bounds of the City of Bayonne. Upon learning from these officers of the association, by means of reports of all the operators on the route in question, that the monthly tax payable to the City of Bayonne by each of the operators (*i. e.*, those who have been named defendants in this suit) would not amount to more than 75 cents, the supervisor referred the officers of the association to the mayor, and after consultation between them, the mayor and the supervisor, they were advised by the mayor to "take their business to the city clerk." Thereupon the same association representatives called upon the city clerk, and after conference with him were told by him: "What do you wish us to do; hire two additional clerks to take care of this matter? It is too small an amount for us to bother with. Continue to pay your full taxes to Jersey City and when we wish to commence to take our proportionate share we will advise you to commence payment to us."

Thereafter, all the defendants continued to pay their full gross receipts tax to the City of Jersey City. However, in the spring of 1929, the president of the association made a second effort on behalf of the defendants to arrange for payment of the proportionate share of the tax to the City of Bayonne. He was again granted audience by the supervisor and the city clerk, and again was informed the city would not accept the tax because the amount involved was too small. Thereafter and until demand was made by the City of Bayonne in June, 1948, the defendants paid the full tax to the City of Jersey City; from and after June, 1948, the defendants have paid their proportionate share of the monthly gross receipts tax to the City of Bayonne.

By the complaint in this suit, filed January 24, 1949, the plaintiff municipality sought to recover its proportionate share of the gross receipts tax from the time in 1928 or 1929

(the complaint is not specific) the defendant began operation on the Bergen Avenue route in the City of Bayonne to the time in June, 1948, when the defendants, after demand by the city, began to pay the current proportionate share of such taxes, and also sought to recover statutory penalties for failure to file monthly statements and make monthly payment of the said taxes. The complaint was founded on *R. S.* 48:16–25 which reads as follows:

"Every person as herein defined, owning and operating an autobus as herein defined, in any city of this state shall, on or before the tenth day of each calendar month, file with the city treasurer of such city a statement, verified· by oath, showing the gross receipts from the business of said autobus or busses during the preceding calendar month, and shall at the same time pay to the city treasurer of such city five per cent of such gross receipts as a monthly franchise tax for revenue for the use of such city; provided, that if the route over which such autobus is operated shall extend beyond the limits of such city, then such person shall include in such statement the length of the route over which said autobus is operated both within and without said city, and shall pay as said franchise tax to said city five per cent. of such proportion of the gross receipts as the length of the route in the city bears to the whole length of such route.

The sum accruing to any city under this section when paid shall be in lieu of all other franchise taxes and municipal license fees.

Any person owning and operating an autobus or busses in any city of this state neglecting or refusing to make such monthly statement or payment at the time and as required herein shall thereby forfeit and pay for such neglect or refusal one hundred dollars for each offense, to be recoverable by action in the name of such city in any court of competent jurisdiction and when collected paid into the city treasury. Any person who shall falsely make any oath required to be made in this section shall be guilty of perjury."

The above statute is a portion of an act relating to jitneys, *i. e.,* buses carrying no more than six passengers, as hereinafter discussed.

The defendants answered, denying that they were required to file monthly statements as alleged in the complaint, and raising *inter alia* separate defenses of full payment, neglect and refusal on the part of the plaintiff to accept the taxes, and the six-year (*R. S.* 2:24–1), two-year (*R. S.* 2:24–22a and *b*) and one-year (*R. S.* 2:24–22d) statutes of limitations.

Pretrial conferences were held on December 21, 1949, and September 29, 1950. In the pretrial orders the plaintiff confined its complaint as to taxes to a period of six years next prior to the commencement of suit, and admitted that it could not recover the penalties sued for in excess of one year.

When the matter came before the trial court for hearing, as submitted on stipulation of facts, oral argument and briefs, the plaintiff sought to amend its complaint to substitute *R. S.* 48:4–14 and *R. S.* 48:4–16 for *R. S.* 48:16–25, *supra*, as the legislative authority upon which the action was founded.

*R. S.* 48:4–14, *supra*, relates to franchise tax in language almost identical to the taxing language of *R. S.* 48:16–25, *supra*, and *R. S.* 48:4–16, *supra*, relates to penalties, in language almost identical to that relating to penalties in *R. S.* 48:16–25, *supra*. *R. S.* 48:4–14 was amended by *L.* 1946, *c.* 130, *sec.* 1 and *L.* 1947, *c.* 230, *sec.* 1. These amendments related principally to the day of the month on which operating reports were required to be filed, and to an exclusion of charter and special bus operation from the provisions of the statute. These amendments do not affect the questions presented on this appeal.

The reason for the substitution appears to be that the plaintiff discovered that *R. S.* 48:16–25, *supra*, is a portion of Article 3 of Chapter 16 of the Title 48 of the *Revised Statutes* and such article relates solely to "any automobile or motor bus, commonly called jitney, with a carrying capacity of not more than six passengers" (*R. S.* 48:16–23). *R. S.* 48:4–14 and 16 are portions of Chapter 4 of Title 48 of the *Revised Statutes*, which chapter relates to any automobile or motor bus carrying passengers for hire which is held out, announced or advertised to operate or run, or which is operated or run, over any street or public place in this State and indiscriminately accepts and discharges such persons as may offer themselves for transportation either at the termini or points along the way or route on which it is used or operated or may be running (*R. S.* 48:4–1). The plaintiff

upon the opening of the trial had admitted that if it were entitled to recover any monies by way of penalties against the defendants, it would be limited to such sums as would be due during a period of one year next after the offense committed under *R. S.* 2:24–22*d*, which is a limitation on actions brought to invoke statutory penalties.

After consideration of the motion to amend, the court allowed the motion to substitute *R. S.* 48:4–14, *supra* (relating to the franchise tax), but denied the motion to substitute *R. S.* 48:4–16, *supra* (relating to the penalty) on the ground that such latter amendment would constitute the pleading of a new cause of action after the same had been barred by the applicable statute of limitation. (*R. S.* 2:24–22*d*, *supra*.) The plaintiff, as above related, admitted that it was bound by this statute.

Following the above related disposition of the motion to amend, the trial court proceeded to a determination of the cause on the merits. Judgment was entered on December 12, 1950, in favor of the plaintiff against the respective defendants for the franchise taxes due (in amounts stipulated by counsel and submitted to the court) without interest, and in favor of the defendants against the plaintiff, without costs, on that portion of the complaint which sought the recovery of penalties. Plaintiff instituted an appeal from so much of that judgment as disallowed recovery for penalties, and defendants instituted a cross-appeal from so much of that judgment as allowed recovery of taxes. As heretofore stated, these appeals were addressed to the Appellate Division of the Superior Court, but prior to hearing there were certified to us upon our own motion.

The initial question involved in the plaintiff's appeal is whether the trial court erred in denying plaintiff's motion to amend the complaint so as to allege the applicability of *R. S.* 48:4–16, *supra,* rather than the penalty clause of *R. S.* 48:16–25, *supra,* to the claim for statutory penalties exhibited in and by the complaint. *Rule* 3:15–1 provides that an amendment sought to be made after a responsive pleading

has been served may be made "\* \* \* only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires \* \* \*" and *Rule* 3 :15-3 provides:

"3 :15-3. When Amendments Relate Back.

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading."

The defendants resisted the motion to amend below, and argue here in support of the trial court's denial thereof, that the amendment as to penalties, if allowed, would have set up an entirely new cause of action, one barred by the applicable statute of limitation, *R. S.* 2 :24-22d *supra.* In *Russo v. Wright Aeronautical Corporation,* 1 *N. J.* 417, 419-420 (1949) we held:

" 'It is indisputably the rule that an entirely new and different cause of action cannot be introduced after the statute has tolled the action.' But it is equally well settled 'that an amendment will not, as a rule, be held to state a new cause of action, if the facts alleged show substantially the same wrong with respect to the same transaction, or if it is the same matter more fully or differently laid, or if the gist of the action or the subject of controversy remains the same.' *Rygiel v. Kanengieser,* 114 *N. J. L.* 311, 312 (*E. & A.* 1934) ; *Casavalo v. D'Auria,* 12 *N. J. Misc.* 81, 83, affirmed 113 *N. J. L.* 328 (*E. & A.* 1934) ; *O'Shaughnessy v. Bayonne News Co.,* 9 *N. J. Misc.* 345, affirmed 109 *N. J. L.* 271 (*E. & A.* 1932). ' "Gist" is the essential ground or object of the action in point of law, without which there would be no cause of action; the cause for which an action will lie; the ground or foundation of a suit, without which it would not be maintainable; \* \* \*.' *Rygiel v. Kanengieser, supra."*

The court below would not have erred in allowing the amendment requested, in view of the practical identity of the statute involved and the apparent knowledge of the defendants of the charges against them. However, under *Rule* 3 :15-1, the trial court is vested with judicial discretion to determine whether the amendment should be allowed.

The exercise of judicial discretion requires consideration of the law and the particular circumstances of the case and is "directed by the reason and conscience of the judge to a just result." *Carlo v. The Okonite-Callender Cable Co.,* 3 *N. J.* 253, 262 (1949); *Hoffman v. Maloratsky,* 112 *N. J. Eq.* 333, 335 (*E. & A.* 1933). We find no abuse of discretion or reversible error in the denial of leave to amend as requested under the circumstances of this case. *Rule* 1:2-20(*b*).

It is next contended by the plaintiff that the complaint was sufficient to constitute a claim for penalties prescribed by *R. S.* 48:4-16, *supra.* The gist of this argument is that it is not necessary to state in the complaint the specific statute under which the claim is stated. Although the new rules of pleading are liberal we feel there is no merit in this contention. An explicit reference to the statute under which a penalty is claimed is essential as it is the specific statute which provides the right to recover the penalty. *Bryant v. Gleason,* 72 *N. J. L.* 431, 432 (*Sup. Ct.* 1905); *Crawford v. New Jersey R. R. Co.,* 28 *N. J. L.* 479, 481 (*Sup. Ct.* 1860). Compare *Brown v. Brown,* 2 *N. J.* 252, 255 (1949).

It is next contended by the plaintiff that the trial court erred in entering judgment for the defendants in the matter of penalties. Defendants in opposition contend that the facts as proved (by stipulation) do not warrant the imposition of the penalties fixed by the statute and that the plaintiff is estopped from now claiming the penalties, by the refusal of its officers to accept the monthly statements and taxes required to be filed and paid under the statute. Suit for penalties for violations which occurred more than one year prior to the date of filing of the complaint in this action was barred by the applicable statute of limitation. *R. S.* 2:24-22*d,* *supra.* In addition, the record indicates affirmatively that the plaintiff abandoned all claims for penalties under *R. S.* 48:16-25 *supra,* and claimed penalties under *R. S.* 48:4-16, *supra,* which was not pleaded (amendment denied, as above discussed). The trial court permitted the amendment to

substitute *R. S.* 48:4–14, *supra*, as to the claim for unpaid taxes.

 In further support of the denial by the trial court of the motion to amend in connection with that portion of the complaint which had relation to penalties, the facts stipulated do not show such "neglect" or "refusal" to pay the taxes as is within the contemplation of the penalty clause of either *R. S.* 48:16–25, *supra*, or *R. S.* 48:4–16, *supra*. It has been held that a taxpayer whose failure to pay taxes until after the expiration of the periods for payment without penalty was due to the fact that he had no opportunity to pay them or to a *bona fide* belief that there was no one legally qualified to receive them is not chargeable with penalties. 3 *Cooley, Taxation* (*4th ed.* 1924), *sec.* 1273, *pp.* 2538–2539; 51 *Am. Jur., Taxation, sec.* 974; *Com. v. Cincinnati, N. O. & T. P. R. Co.,* 288 *Ky.* 43, 155 *S. W. 2d* 460, 137 *A. L. R.* 301.

The defendants by cross-appeal suggest two questions for our determination: first, whether in a case where the statute authorizing the tax fails to provide a means of collection, the authority entitled to collect the tax may resort to civil action, specifically an action in the nature of debt, and, second, whether the plaintiff is estopped to collect the tax by reason of the action of its officers.

 The prevailing fundamental concept throughout the United States is that taxes are not debts in the ordinary sense of the term but are imposts levied by authority of government upon its individual citizens for the support of the state. See 51 *Am. Jur., Taxation, sec.* 945, *p.* 831; 3 *Cooley, Taxation* (*4th ed.* 1924), *sec.* 1329. However, we find that in many jurisdictions collection of taxes by civil action is permitted where the statute imposing the tax fails to provide a means of collection. In 3 *Cooley, Taxation* (*4th ed.* 1924), *sec.* 1331, *pp.* 2631–2632, it is stated:

"The question often arises whether the ordinary remedies for the collection of debts can be applied to taxes. In general it will be found that statutes imposing taxes make special provision for their collection, and do not apparently contemplate that any others will

be necessary; but these may, nevertheless, fail; and the question then arises whether the tax must fail also, or whether resort may be had by the state to such remedies as would be available to individuals to enforce demands owing to themselves. But instances have occurred of tax laws which provided for laying the tax, but made no provision whatever for collection. In such case it may well be held that the legislature contemplated the enforcement of the tax by the ordinary remedies; and therefore, if the tax was assessed against an individual, that *assumpsit* or debt would lie for the recovery thereof. In other words the implication of an intent to give a remedy by suit is so strong as to be conclusive, where the statute provides for a tax, but is silent as to the method of collection."

In this State there is no dispositive precedent on this question. However, in *City of Camden v. Allen,* 26 *N. J. L.* 398 (*Sup. Ct.* 1857) the subject was considered. The City of Camden attempted to recover real estate taxes by an action of debt. Demurrer was sustained on the ground that there was a plain method prescribed by the statute for the recovery of the taxes. Chief Justice Green in the *Camden* case said:

(P. 400) : "If, indeed, a tax should be imposed, and no method be provided by law for its recovery, a resort to legal proceedings would be a matter of necessity. By the fundamental principle of the law there must be a redress for every wrong, a method of recovery for every due."

Justice Potts, writing a concurring opinion in the *Camden* case stated:

(P. 404) "There is no doubt that, but for the principle which the defendant in this case invokes, the action of debt would lie for the recovery of a tax legally assessed. But where, as in the case before the court, the tax is imposed by a public act and for public purposes, and the act itself prescribes the specific remedy to be resorted to for its collection, this is to be taken as excluding the common law remedy."

In *Murphy v. Jos. Hollander, Inc.,* 131 *N. J. L.* 165 (*Sup. Ct.* 1943) it was held:

(P. 171) "Where the legislature has provided a special method for the collection of taxes, such is ordinarily an exclusive procedure, and remedies based upon general legal rules may not be invoked. The maxim '*expressio unius est exclusio alterius,*' governs in the

absence of provision otherwise, express or fairly to be implied. *Free-holders of Atlantic v. Weymouth, supra; Baker v. East Orange*, 95 *N. J. L.* 365; affirmed 96 *Id.* 267. Yet, where the statutory means of collection have been exhausted, resort to other measures to enforce payment of the tax, and thus to obviate a failure of justice, have been deemed legally justifiable; and the tax is considered a 'debt' in the sense of an obligation or liability for which a creditor's bill will lie. A 'creditor' is one who has the right to demand the fulfillment of an obligation. *Darnell v. State*, 174 *Ind.* 143, 90 *N. E. Rep.* 769; *State v. Georgia Co.*, 112 *N. C.* 34; 17 *S. E. Rep.* 10; *Albany County v. Durant*, 9 *Paige* 182; reversed, *sub. nom. Durant v. The Supervisors of Albany Co.*, 26 *Wend.* 66; *McInery v. Reed*, 23 *Iowa*, 410; *United States v. Pacific Railroad Co.*, 4 *Dillon* 66, *Fed. Cas. No.* 15983. The Federal Supreme Court has in certain circumstances recognized a tax as a debt, while in other circumstances it has been denied that character. *Lane County v. Oregon*, 7 *Wall.* 71; *Dollar Savings Bank v. United States*, 19 *Wall.* 227."

In the *Murphy* case the former Supreme Court had before it an application for a writ of *mandamus* to compel payment of taxes by a private corporation. In the discussion of civil remedies for collection of taxes, the court in the *Murphy* case made the above statement, and also held that *mandamus* was available in a proper case, but that neither *mandamus* nor debt was available there because the statute provided a special method for the collection of the taxes imposed thereby.

█ We are satisfied that *R. S.* 48:4–14 and *R. S.* 48:16–25, *supra*, fail to provide a method for collection of the taxes thereby imposed, and that a civil action, in the nature of the action of debt or *assumpsit*, will lie for collection of such taxes under these statutes.

█ The final point, of estoppel against the city's effort to collect taxes, raised by the defendants must be decided adversely to them. Doctrines of estoppel are not applied against the State and its counties and municipal corporations to the same extent as they are against individuals and private corporations. Collection of taxes is a governmental function in the performance of which a city may not be bound or estopped by unauthorized acts of its officers. 16 *McQuillin, Municipal Corporations* (3d ed. 1950), *sec.* 44.131, *p.* 349; 51 *Am. Jur., Taxation, sec.* 966, *p.* 845; 1 *Cooley on*

*Taxation* (*4th ed.* 1924), *sec.* 61, *p.* 159. Here there appears to have been no authorized waiver of the taxes. The progress of action has been heretofore referred to and need not be reiterated.

For the reasons above stated the judgment of the Hudson County Court is affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.