S & S BUILDERS, INC., a corporation of the State of Delaware, Appellant, v. PASQUALE DI MONDI, JOHN DI MONDI and JOSEPH A. DI MONDI, trading as Delaware Block Company, Appellees.

*(November 9, 1956.)*

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*David N. Snellenburg, II* (of the firm of Killoran and Van Brunt) for appellant.

*Januar D. Bove, Jr.* (of the firm of Connolly, Cooch and Bove) for appellees.

Supreme Court of the State of Delaware, No. 21, 1956.

BRAMHALL, J.:

The questions raised by this appeal relate to a suit brought by a materialman against a general contractor by reason of an alleged verbal guaranty on the part of the general contractor to pay the indebtedness of the subcontractor to the materialman. The trial court gave judgment for the materialman and the general contractor appeals. He asserts that the lower court was in error, first, in refusing a motion for summary judgment based on the statute of frauds; second, in holding that the evidence showed a guaranty; and third, in holding that the guaranty, if any, was not discharged by the act of the materialman.

Appellant, S & S Builders, Inc., was the owner and general contractor for the construction of a suburban housing development, near Wilmington, known as Rose Hill Gardens. Appellees, trading as the Delaware Block Company, furnished blocks on the job to one Frank J. Cresto, a sub-contractor. Several times during the progress of the work, Cresto defaulted in his payments to Delaware Block, as a result of which Delaware Block held up further deliveries. On these occasions, after telephone conversations between one Walter Sezna, president of S & S, and one of the partners of Delaware Block, deliveries were resumed.

Delaware Block alleges that Sezna promised that if Delaware Block would continue to make deliveries, S & S would see that Delaware Block was paid in full.

Sezna admitted that he stated to Delaware Block "I am going to make every effort to see that you are paid", and on one occasion stated to Mr. MiMondi, one of the partners of Delaware Block, that he would see that Delaware Block got its money without having to lien the job. He denied, however, that on be-

half of S & S he unequivocally guaranteed the payment of Delaware Block's bill by Cresto.

On behalf of Delaware Block testimony was offered to show that on each of the occasions when deliveries were held up, and at various other times, Sezna, on behalf of S & S, orally promised Delaware Block that if the deliveries of the blocks were continued, S & S would see that Delaware Block was paid in full; that, after the work was finished, Cresto was notified by Sezna to take a release to Delaware Block for signature; that Sezna directed Cresto to give to Delaware Block a post-dated check for the balance due; that Sezna promised Cresto that this check and other checks, representing Cresto's indebtedness, would be made good by S & S, and Cresto so advised DiMondi; that in a telephone conversation Sezna told DiMondi, a partner of Delaware Block, that as soon as his accountant came in Cresto would have a check and would deposit it and that Delaware Block's check would be good; that based upon these representations Delaware Block signed the release and delivered it to Cresto, who at the same time handed to Delaware Block a post-dated check in full payment of the balance due, that Cresto took the release to Sezna; that Sezna telephoned Delaware Block to ascertain the correctness of the signature; that the next morning Sezna gave to Cresto a check for $6600; that at the time Sezna knew that the total amount of the checks outstanding was around $13,000; that when Cresto informed Sezna that the check was insufficient to cover the outstanding checks which Sezna had instructed Cresto to give, Sezna replied that that was his hard luck; that Cresto then crossed out the special endorsement on the check indicating that it was for deposit, cashed it and stopped payment on the check to Delaware Block.

Delaware Block instituted suit against S & S, alleging that S & S was responsible for the payment of Cresto's indebtedness on the ground that it, through Sezna, had orally guaranteed to Delaware Block the payment of Cresto's account.

A motion for summary judgment was filed by S & S, based on the ground that the testimony conclusively showed an oral

guaranty and that the statute of frauds was applicable. It was denied on the ground (1) that the case fell within the exception to the statute, and (2) that there was a genuine issue of fact whether or not there was an original undertaking by S & S.

Thereafter the case came on to be heard before the court without a jury. Upon the trial, the trial judge found: (1) that the oral representations of Sezna amounted to a guaranty; (2) that the guaranty was not discharged as a result of the telephone conversation between Sezna and DiMondi, at which time Di-Mondi informed Sezna that the release had been signed; and (3) that by reason of the misapprehension under which Di-Mondi was laboring, the release of liens itself did not amount to a release of the guaranty. S & S appeals.

The first question which must be determined is whether or not the trial judge was in error in finding that the oral representations of Sezna on behalf of S & S amounted to a guaranty. The trial judge specifically found that they did. In so doing, we must presume that he accepted the evidence offered on behalf of Delaware Block to substantiate this contention.

If that evidence is sufficient to support the trial judge in his finding, it will not be disturbed. *Chalfant v. Reinhardt, Attorney General, ex rel. Eves,* 12 *Del. Ch.* 389, 113 *A.* 674; *Blish v. Thompson Automatic Arms Corp.,* 30 *Del. Ch.* 538, 64 *A.* 2d 581.

We think that there was sufficient evidence to substantiate the finding of the trial judge. In fact, the testimony of Sezna to the effect that he was going to see that Delaware Block was paid, that he would see that it got its money without having to lien the job, amounts to an admission of responsibility. Delaware Block on two occasions had refused to continue making deliveries because Cresto's check had been returned unpaid. On each occasion, as a result of conversations between Sezna and DiMondi, deliveries were resumed. Under these circumstances, we think that the trial judge was fully supported by the evi-

dence in finding that for the purpose of having Delaware Block continue to make deliveries, Sezna guaranteed to it the payment of Cresto's account.

The second question is whether the suit was barred by the statute of frauds as an action to charge the defendant for the debt of another, there admittedly being no contract or memorandum in writing. That statute, 6 *Del. C.* § 2714, provides as follows:

"No action shall be brought to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof, or to charge any person to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing; except for goods, wares and merchandise, sold and delivered, and other matters which are properly chargeable in an account, in which case the oath or affirmation of the plaintiff, together with a book regularly and fairly kept, shall be allowed to be given in evidence in order to charge the defendant with the sums therein contained."

This statute, down to the exception, embodies the substance of the fourth section of the English statute of frauds (29 *Car. II*, ch. 3.) Prior to the enactment of the statute in England, written evidence of a guarantee was not required. *Steel v. McKinlay*, (1880), 5 *A. C.* 754.

Our statute stems from a colonial act (25 *Geo. II*)[1] found in 1 *Del. L.* Ch. 136, p. 237. When our colonial legislature adopted our statute it added to the fourth section of the English statute an exception not appearing in the latter statute, and declined to enact the seventeenth section of the English statute relating to the sale of goods. The seventeenth section has never been in

force in this state. *Alderdice v. Truss*, 2 *Houst.* 268; *Hall v. Livingston*, 3 *Del. Ch.* 348.

Delaware Block asserts that the claim is plainly within the exception set forth in this statute providing: "except for goods, wares and merchandise sold and delivered and other matters which are properly chargeable to an account." S & S suggests that the exception refers only to the parties to the account, that is, the original debtor and creditor, and that it was not intended that third parties shall be bound thereby.

We are uncertain as to the purpose of the legislature in including in the statute the exception relating to book accounts. We must, nevertheless, endeavor, if possible, to give to this clause some reasonable interpretation. The exception seems to be unique. There has not been pointed out to us—and in our search we have been unable to find—any similar language in the statute of frauds in any other state.

To accept the suggestion of S & S that the exception refers only to the original debtor and creditor and not to third parties is to emasculate it. It must be assumed that the legislature intended to give meaning to every part of the statute. *Consolidated Fisheries Co. v. Marshall*, 3 *Terry* 283, 32 *A.* 2d 426, affirmed 3 *Terry* 532, 39 *A.* 2d 413; *Martin v. American Potash & Chemical Corp.*, 33 *Del. Ch.* 234, 92 *A.* 2d 295. The statute shows on its face that the clause can have no application to either an agreement of marriage or a contract for the sale of lands. Conceivably it might have some application—a situation extremely unlikely—to an agreement not to be performed within the space of one year. In our opinion, to give this clause any meaning in its relation to the section as a whole, it must be related to the responsibility of a guarantor for the debt, default or miscarriage of another. That is certainly the most plausible explanation. When we accept this interpretation the language has some definite meaning as a part of the section as a whole and the purpose of the clause becomes more readily understood. A written memorandum of an original debt in a book "regularly

and fairly kept" certainly makes a claim more easily susceptible of proof. It is conceivable that the legislature for that reason may have determined that other written evidence was unnecessary under such circumstances.

The product involved here consisted of concrete blocks sold and chargeable on an open account. The sales were recorded on slips which were entered in a sales book and ledger. There is no dispute as to delivery. We think that this claim comes within the language of the exception as set forth in the statute and that it is not necessary that the same be in writing.

Third, was the trial judge in error in finding that the release was signed under a misapprehension and therefore did not amount to a release of the guaranty? Delaware Block at the request of Cresto signed and delivered to Cresto a release of liens. At the same time Cresto delivered to Delaware Block a post-dated check which he stated Sezna would make good. Delaware Block contends that based upon this statement and the statements of Sezna himself, it signed the release and accepted Cresto's post-dated check. The trial judge found that DiMondi, of Delaware Block, was acting under a misapprehension at the time he signed the release and that the same did not therefore amount to a release of the guaranty. Presumably, the misapprehension referred to by the trial judge was the understanding on the part of DiMondi, of Delaware Block, that the check left by Cresto would be made good by Sezna.

S & S contends that when Sezna telephoned DiMondi and DiMondi stated that he had signed the release, and upon being informed by Sezna that he would give Cresto the check at that time, Delaware Block was thereby estopped from asserting any defense to the release.

It is true that if a creditor, even by mistake, advises a guarantor that the claim, the payment of which has been guaranteed by him, has been paid and the guarantor as a result of such statement surrenders security, or in some other manner changes his position to his disadvantage, the guarantor is thereby

released from any liability under the guaranty. *Carpenter v. King*, 9 *Metc., Mass.*, 511, 43 *Am. Dec.* 405. But, if we accept the evidence offered on behalf of Delaware Block—as in view of the trial judge's finding we must—the change of position on the part of S & S was the result of its own action and not by reason of any act or mistake on the part of Delaware Block. The evidence offered by Delaware Block showed that S & S promised to see that Delaware Block's claim against Cresto was paid; that Sezna on behalf of S & S promised that this check and other checks issued by Cresto, amounting altogether to approximately $13,000, would be made good and that Delaware Block was advised to that effect. Thereafter S & S gave Cresto a check for $6600 only and thus made it impossible for Cresto to pay the total amount of the checks he had issued. Under this state of facts the trial judge found that the execution of the release of liens by Delaware Block and its consent to the issuance of the check to Cresto, were predicated upon a misapprehension. We think that this finding is fully sustained by the evidence.

We find no error. The judgment of the lower court is affirmed.