STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation of the State of Illinois,
Plaintiff,

*vs.*

ROBERT A. SHORT, Insurance Commissioner of the State of Delaware,
Defendant.

*New Castle, May 8, 1964.*

*William Prickett*, of Prickett and Prickett, Wilmington, for plaintiff.

*Thomas Herlihy, III*, Deputy Atty. Gen., for defendant.

MARVEL, Vice Chancellor.   This action filed herein on June 11, 1962 seeks to establish plaintiff's contention that it is not subject to a special tax levied annually on fire insurance companies doing business in Delaware, such tax being in the form of a levy on gross premiums

collected by such companies for the insuring against loss by fire of property within the limits of the State of Delaware. *Title* 18 *Del.C.* § 2705. The stated purpose of such statute, is that of "* * * assisting in maintaining fire companies or departments in this State * * *".

The complaint not only constitutes an appeal from an adverse decision of the *Insurance Commissioner of the State of Delaware,* a remedy furnished by *Title* 18 *Del.Ch.* § 333, but also invokes the general equity powers of this Court in support of the relief sought. After praying for interim relief (an application which was not pressed) the complaint seeks a ruling by the Court to the effect that plaintiff is "* * * not a fire insurance company doing business in the State within the meaning of * * *" the statute in issue.

While plaintiff concedes that its charter permits it to write fire insurance as well as virtually all other types of property and casualty insurance other than insuring against death, its complaint alleges that "* * * its Certificate of Authority [1] for doing business in Delaware is limited to casualty and inland marine insurance and does not include fire insurance * * *". Plaintiff further contends that its business in Delaware is in fact confined to such fields of insurance. Plaintiff accordingly takes the position that it is not a fire insurance company doing business in the state within the meaning of the statute in question and that in point of fact it has written no fire insurance policies on property in Delaware. It therefore claims to be exempt from payment of the tax imposed by the terms of *Title* 18 *Del.C.* § 2705.

On April 13, 1962, the Commissioner having refused to be bound by plaintiff's previously filed tax statement for the calendar year 1961, declined to accept plaintiff's tendered check of $26,516.14, an amount calculated by plaintiff to be the amount due under the Delaware insurance tax law applicable to it, namely the general or regular gross insurance premium law, *Title* 18 *Del.C.* § 2702. On May 8, 1962, the Commissioner followed up his rejection of plaintiff's tendered check by informing plaintiff that he would decline to renew its certifi-

1. The certificate issued by the Commissioner for the period from March 1, 1961 to March 1, 1962 authorized plaintiff "* * * to transact the business of Casualty, excluding Fidelity and Surety; Inland Marine Insurance within the State of Delaware * * *".

cate of authority unless plaintiff agreed to comply with the provisions of *Title* 18 *Del.C.* § 2705. However, on July 2, 1962 a stipulation was approved by the Court under the terms of which plaintiff filed a revised tax statement and deposited a check in the additional amount of $6,517.74 in the Registry of this Court, which additional amount is agreed to be the tax which would be due from plaintiff for the year 1961 under the provisions of 18 *Del.C.* § 2705 should the ruling of the Commissioner be upheld. The Commissioner having further agreed to accept plaintiff's previously tendered check of $26,516.14, has also granted plaintiff leave to continue to carry on its normal business activities in Delaware pending judicial disposal of the question here presented. A further stipulation concerning plaintiff's 1962 liability, if any, under the special premium tax here in issue having been approved and the tax payable under the terms of said statute placed in escrow, the case has been briefed and argued on plaintiff's motion for summary judgment. This is the opinion of the Court on said motion.

*Title* 18 *Del.C.* § 2705 provides inter alia:

> "*Special tax on gross premiums of fire insurance companies.* For the purpose of assisting in maintaining fire companies or departments in this State, every fire insurance company doing business in this State shall annually pay to the Insurance Commissioner on or before the first day of March in addition to the other taxes, fees and charges required by law, a tax equal to $3\frac{1}{2}\%$ of the gross premiums, less return and reinsurance premiums received from other companies or by any agent or agents of such company for such company, in cash or otherwise, from the insurance of property within the limits of this State during the preceding calendar year."

The following section, § 2706, goes on to set forth how the moneys derived under the terms of § 2705 for the purpose of assisting and maintaining fire companies or departments in the State and City of Wilmington shall be distributed on a proportionate basis. Such section provides that every fire insurance company doing business in Delaware shall be required to file a detailed annual statement of all business done by each such company in the City of Wilmington as well as in the counties, including that part of New Castle County out-

side of Wilmington. On the basis of such reports the moneys raised by the tax are directed to be paid out proportionately by the Insurance Commissioner to the city treasurer of Wilmington and to the treasurers of the several counties. In the case of the counties the statute directs that the proportionate amounts due shall be distributed equally by the Levy Court of the respective counties "* * * for the purpose of assisting in maintaining fire departments in said counties." In the case of the City of Wilmington, however, the statute provides that the tax on premiums derived from the insurance of property within the limits of Wilmington shall be paid to the city treasurer for inclusion in the City's Firemen's Pension Fund.

To begin with, 18 *Del.C.* § 2705 and § 2706 must be read together having been originally passed in such manner. Furthermore, the moneys raised under § 2705 are applied under § 2706 "* * * for the benefit of fire companies of this state and the firemen's pension fund of the Bureau of Fire of the City of Wilmington. * * *" *Aetna Casualty & Surety Co. v. Smith,* 36 *Del.Ch.* 391, 131 *A.2d* 168. I am also satisfied that the provisions now found in 18 *Del.C.* § 2705 and § 2706 were enacted on the theory that if companies insuring property against loss by fire in Delaware were to be made involuntary contributors to the fire fighting forces of the States, the consequent reduction in fire loss would benefit all concerned.

At the time of its enactment in 1891 of the first Delaware statute dealing with the taxing of fire insurance companies, § 7, *Chap. 23, Vol. 19, Laws of Delaware,* the insurance business was a more rigid affair than now. That is to say, a company incorporated to insure against property loss by fire was not authorized to engage in other insurance lines. However, over the intervening years corporate charters and certificates of authority for insurance companies have been broadened through liberalizing legislation. As a result, so-called multiple line insurance is carried on by many old line fire insurance companies, such companies now being authorized to insure against a wide diversity of property and casualty risks. See 18 *Del.C.* § 504. Accordingly, in my opinion, a taxing statute such as the one here in issue can not because of its very nature operate fairly when applied indiscriminately to the indivisible premiums paid to State Farm by those it insures in Delaware against a broad field of automobile and marine

risks. The Commissioner in his answer has taken the position that State Farm's charter[2] "* * * permits it to write fire insurance, and policies written by plaintiff in Delaware cover risk of loss by fire * * *", apparently arguing that while express fire loss coverage is a relatively minor factor in plaintiff's comprehensive insurance, the tax in question may be levied on all premiums paid to State Farm for all insurance issued by it in Delaware other than on "casualty lines". In other words, the Commissioner claims that the tax in question should be imposed on all companies engaged in so-called "fire lines" in Delaware regardless of the nature of their general business and that in the case of plaintiff all of its business other than its purely "casualty lines" is taxable, although the only type of fire loss against which plaintiff specifically insures is buried in clauses providing comprehensive coverage for automobile[3] and boat hulls.

■■ A tax statute should not be construed so as to place a greater burden on the taxpayer than is expressly and clearly intended, *Consolidated Fisheries Co. v. Marshall*, 3 *Terry* 283, 32 *A.2d* 426; aff'd, 3 *Terry* 532, 39 *A.2d* 413. Here, I have no doubt but that the legislative intent was to have suburban and rural fire companies throughout the State benefited by a tax on premiums paid for fire insurance on property located in the same county, and, in the case of Wilmington, that such city's firemen be benefited out of the premiums paid on insured city property. Admittedly, there are motor vehicle fires, but the presence of a motor vehicle in any particular part of the State when a fire occurs can not be predicted. More to the point, it is quite clear that no effort has been made in the statute in issue or by the Insurance Commissioner to develop a reasonable formula for determining what portion of premiums paid for property insurance sold by plaintiff is properly allocable to the risk of loss by fire. To permit the Commissioner to apply the terms of the statute as he has done in the case at bar would be to condone an unreasonable construction of a statute

2. The tax here involved is, of course, imposed on the doing of business. Therefore, the mere existence of a corporate power is irrelevant, the selling of fire insurance being the critical matter at issue here.

3. "Breakage of glass, or loss caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, wind storm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion."

which appears to have become unworkable because of changing methods of providing insurance coverage.

■ In short, I am of the opinion that the Commissioner's reading of the statute is unwarranted and that the sums sought to be assessed by him against plaintiff on the basis of such reading may not be collected. While there appears to be a dearth of precedent on the precise question presented, I accept the reasoning of the unreported case of *Allstate Insurance Company v. J. Edward Day,* In *Chancery,* No. 99957 (1952) *Circuit Court of Sangamon County, Illinois,* as opposed to that expressed in *Motors Insurance Corp. v. Birmingham,* 269 *Ala.* 339, 113 *So.2d* 147. The case of *La Salle Fire Insurance Co. v. Jenkins,* 185 *Ark.* 484, 47 *S.W.2d* 792, makes no attempt to deal with the basic problem presented in the case at bar. Unlike Arkansas, Delaware has adopted the New York standard form to cover property loss by fire.

On notice, an order may be submitted granting plaintiff's motion for summary judgment.