JOHN M. CONWAY, Chairman, CHARLES F. HUDSON, CLARENCE RASH, GEORGE J. SCHULZ, and WILLIAM E. SAVERY, Members of The Delaware Alcoholic Beverage Control Commission, Appellants, v. WOLF LIQUOR COMPANY, a Delaware corporation, Appellee.

(*May* 15, 1964.)

TERRY, Chief Justice, and WOLCOTT and CAREY, Justices, sitting.

*George Gray Thouron* for appellants.

*F. Alton Tybout* for appellee.

Supreme Court of the State of Delaware, No. 9, 1964.

CAREY, Justice.

This is an appeal from a decision of the Superior Court granting summary judgment in favor of Wolf Liquor Company (Wolf), an "importer", for the recovery of certain taxes paid to the Delaware Alcoholic Beverage Commission (Commission). The appeal requires a determination of the correct effective date of an amendment to 4 *Del. C.* § 581(a) (2) which increased the tax on wine from 35c to 80c per gallon, appearing in 53 Del.Laws, Ch. 106. As amended, § 581(a) (2) reads as

follows:

"(a)   No person may purchase and receive from the Commission, or from any manufacturer or importer, any alcoholic liquor without paying to the Commission a tax on the alcoholic liquor purchased at the following rates—"

"(2)   For each gallon of wine, except sacramental wines, 80 cents."

Prior to June 23d, 1961 the language was the same except that the rate was 35c. The change was finally adopted by the General Assembly on June 22d, 1961 and approved by the Governor on June 23d, 1961. The exact time of his approval is unknown, although it was before five o'clock in the afternoon.

Chapter 3 of 4 *Del. C.* confers rather broad powers upon the Commission. Inter alia, it is authorized to adopt and promulgate rules and regulations not inconsistent with the statute, and those rules and regulations shall have the force and effect of law. Rule #8 promulgated by it provides the procedure to be followed by an importer desiring to obtain spirits or wine from outside of the State. We quote the applicable subdivision in full:

*"Spirit and Wine Shipments into Delaware*

"Licensed importers wishing to purchase spirits or wine will proceed as follows:

"After arranging with a manufacturer or a dealer for the purchase of such spirits and wine as he needs, an importer shall send to the Commission (on purchase order blanks furnished by the Commission) an order for the purchase of such spirits and wine, stating the quantity, variety and size of immediate container for such spirits and wine.

"At the same time cash, money order or check for the value of the tax shall be forwarded to the Commission. The Commission, if it approves this order, will send it to the manufacturer or dealer.

"Upon notification of arrival of the shipment, the Commission will arrange to clear it and direct delivery to the consignee.

"An inspector of the Commission shall inspect the bill-of-lading to make certain it agrees with the purchase order and invoice. Any wines and spirits for which the tax has not been paid shall be seized by the Commission.

"A copy of the bill-of-lading showing the size, type, and brand of wines and/or spirits shipped shall be mailed to the Commission by the manufacturer or dealer shipping such wines and/or spirits into Delaware the day shipment is made. The copy of the bill-of-lading must agree with the Commission purchase order and any over-shipment will be returned to the manufacturer or dealer at his expense."

On June 23d, 1961 about 4 P.M., Wolf, having previously made necessary arrangements with a New Jersey supplier, delivered to the Commission several orders for a total of about 23,000 gallons of wine, together with checks for the tax computed at the rate of 35c per gallon. The orders were fully processed by the Commission's agents and the proper copies mailed that same evening to the New Jersey supplier. The wine was delivered to Wolf's place of business the following day, which was a Saturday. The Commission's inspector examined and released the shipment to Wolf on Monday and Tuesday, June 26 and 27th, 1961.

The Executive Secretary of the Commission first learned informally of the approval of the tax increase

on Monday, June 26th. He called a meeting for the next day of representatives of all importers, following which, with approval of the Commission's Chairman, he decided to make the increase effective on July 1st, 1961. He notified all importers of this decision by letter on June 30th. The decision was never approved by any member of the Commission except its Chairman.

Between June 23rd and July 1st Wolf purchased some additional wine, through the usual procedures, on which he paid the tax based upon the 35c rate.

On July 17, 1961, the Executive Secretary, at the direction of the Chairman, informed all importers of a ruling received from the Executive Department that the increase in rate was applicable to all wine received by the importer after the close of business on June 23d. The importers were also told that they must pay the difference in the taxes according to that ruling. Here again, no member of the Commission except the Chairman participated in this decision. Concededly, failure to pay would have meant the loss of a license to do business. Wolf therefore paid the difference under protest and brought this suit to recover it.

The Court below held that the Commission, as a body, had the power to determine when the increase should become effective, since the Act itself contained no express provision covering that point. It also held that there was no authority in the Executive Department to set an effective date. Finally, it held that the Chairman and Executive Secretary had no power to do so. Because the Commission as a whole had never passed upon the question, the Court held that the increase did not apply to any wine *purchased* before the amendment was approved by the Governor and that Wolf's purchases were not subject to

the increased tax. Apparently, the Court's attention was not called to the fact that a few of the purchases had been made by Wolf between June 23d and July 1st, as the opinion says nothing about them.

■ ■ Where there exists no controlling constitutional or general statutory provision, as is true in Delaware, the authorities support the proposition that an Act takes effect immediately upon its approval by the Governor unless the Legislature has manifested a contrary intention in the Act itself. See 82 C.J.S. Statutes § 405, p. 974 and the cases cited therein.[1] We therefore hold that the statute before us became effective on June 23d, 1961. This holding is not based upon the ruling of the Executive Department, but upon the fact that the statute contains no language indicating any other date.

■ We neither approve nor disapprove the lower Court's view that the Commission's powers are sufficiently broad to enable it to set a date when an Act like this should become effective, when the Legislature has not specifically done so. Even if we concede that the Commission has such power, it did not even attempt to exercise it in this instance. The Legislature did not confer the power upon the Chairman and Executive Secretary.[2] There is no showing that the Commission had attempted to delegate it to those officers and, in fact, we doubt that it could delegate to them a matter of this importance. Determina-

---

[1]Article 3, § 18 of our Constitution, *Del. C.* provides that a bill shall not become law until approved by the Governor, or passed over his veto, unless he fails to return it to the General Assembly within ten days, if the Assembly is still in session.

[2]An earlier amendment to this same section, in 49 Del.Laws Ch. 342, expressly provided: "* * * shall become effective July 1, 1953, or as soon thereafter as the * * * Commission is able to put such section into effect". On that occasion the power was conferred upon the Commission, not upon its officers.

tion of a date on which the amendment should become effective would seem to be more than mere ministerial matter; it would appear to involve the exercise of judgment and discretion to the extent that it is non-delegable, absent statutory authorization. 73 C.J.S. Public Administrative Bodies and Procedure § 57, p. 380.

■ ■ Wolf argues that the letters sent out by the Executive Secretary should operate as an estoppel against the Commission to claim an effective date prior to July 1st. The short answer to this argument is that, in matters of this nature, a State or its agencies cannot be estopped by the unauthorized acts of its officers. 49 Am. Jur. 299; *City of Bayonne v. Murphy & Perrett Co.*, 7 N.J. 298, 81 A.2d 485. We find nothing conflicting with this holding in any of the Delaware cases cited by appellee, namely, *Singewald v. Girdin*, 36 Del.Ch. 152, 127 A.2d 607; *State ex rel. Davis v. Woolley*, 9 Terry 34, 97 A.2d 239; *Leasure v. Beebe*, 32 Del.Ch. 210, 83 A.2d 117.

The Commission specifically disclaims reliance upon any theory that the amendment was effective earlier in the day than the actual moment it was signed by the Governor. It also agrees that Wolf paid the tax of 35c per gallon before the Governor did affix his signature. It argues, however, that under the statutory language the tax is imposed upon all wine "purchased and received" by the importer, and that the "purchase" was not complete until the final release of the wine by the Commission's inspector, which was, of course, after the increase was effective. It points out that, under the procedure set up by the regulation, a number of things could have occurred which would have prevented a release of the wine to Wolf and which would thus have prevented the completion of the purchase. It concludes that the tax should be computed at the rate in effect at the time of the release of

the wine.

■ We find ourselves in disagreement with this argument. As we interpret the statute and the regulation, the tax is due and payable at the time the order is delivered to and accepted by the Commission, and is to be computed as of that time subject to later adjustment. Before this takes place the importer has made his tentative purchase agreement with the supplier, but that agreement is subject to the approval of the Commission. That approval is not given until after the tax has been paid. After the approval has been obtained, something may occur to prevent the importer from actually receiving all or a part of the order, in which event he would be entitled to a refund or an adjustment in the tax previously paid. This view of the matter is supported by several considerations, aside from the rule of strict construction in favor of the taxable laid down in *Consolidated Fisheries Co. v. Marshall*, 3 Terry 283, 32 A.2d 426, affirmed 3 Terry 532, 39 A.2d 413. First, under § 581 the tax is "on the alcoholic liquor purchased". Secondly, under the same section, the tax must be paid before the purchase *and* receipt can legally take place, i.e., before not only the *receipt* but also the *purchase*. Thirdly, under § 906, the wine cannot be legally transported in this State until after the taxes have been paid.

Appellant suggests that the foregoing interpretation ignores the word "receive" in the statute. We think not. The word was included chiefly, we believe, to protect the importer against payment of a tax upon liquor purchased but not in fact received.

It follows that the tax rate applicable in this case to the purchases made on or before June 23d was 35c per gallon and appellee is entitled to recover the excess, but the rate applicable to purchases made after June 23d was

80c per gallon. The amount of the judgment below must be amended by excluding the refund for the purchases in the latter category.

With this modification, the judgment of the Superior Court will be affirmed.