THE STATE OF DELAWARE, on the relation of Joseph W. Davis, v. JOHN A. WOOLLEY, WILLIAM A. HENRY, ROBERT P. BARNETT, JOHN F. PORTER, JR., and CHARLES E. GRUBB, constituting and being members of the Board of Trustees of New Castle County Workhouse, and GEORGE R. CLARK, ELLWOOD S. LEACH and S. GILBERT PIERCE, constituting and being members of the Levy Court in and for New Castle County.

(*September* 22, 1952.)

CAREY, J., sitting.

*Stewart Lynch* and *Florence E. Freeman* for relator.

*Robert P. Barnett* for the Board of Trustees of New Castle County Workhouse.

*William S. Satterthwaite* and *Clarence W. Taylor* for The Levy Court of New Castle County.

Superior Court for New Castle County, No. 588, Civil Action, 1951.

436

CAREY, J.:

The conclusions reached on questions 4 and 5 as stated above render consideration of the others unnecessary. These questions are, does the quoted Act include the relator and entitle him to any benefits it was designed to confer, and does the Act have the effect of changing relator's compensation?

Before those questions are discussed, one thing should be made clear: the stipulation of facts does *not* aver that the Board of Trustees made a new contract with relator after the Act was adopted, or that it expressly agreed to pay him overtime compensation based on a forty-hour workweek. The Board apparently took the position that it could not make such an agreement because of lack of funds. Its action in seeking the extra money from the Levy Court suggests nothing more than the thought that it was willing to make the new arrangement if and

when the money could be obtained. We are, accordingly, not dealing with an express or implied promise on the part of the Board. On the contrary, relator's rights depend upon the validity of his contention that the statute itself operated as an amendment of his original contract of hire, and that the amendment so made was binding upon the respondents. Obviously his claim must fail if the Act does not include him, or if the effect of the Act is not to alter the terms of his agreement.

The respondents contend that the body of the Act does not include the guards at the Workhouse; that these guards are not "employees of New Castle County" and are not within any of the other groups mentioned. They further contend that, if the guards are to be considered "employees of New Castle County", then the body of the Act is broader than the title and to that extent is unconstitutional.

It is clear that the guards are not employees of the Levy Court, for as will be seen, they are hired, paid and controlled by an entirely independent agency, the Board of Trustees. Whether they are "employees of New Castle County" presents a difficult problem, for the precise meaning of that term is nowhere defined. New Castle County is simply a geographical subdivision of the State and is not a corporate entity. The phrase may or may not mean, as relator suggests, all employees whose wages are paid directly or indirectly out of county taxes. Without pausing to examine its various possible meanings, let us assume, *arguendo*, that it does include the respondent. We then come to a constitutional problem which is, in my opinion, fatal to relator's case, because under this hypothesis the body of the act is broader than its title in that the body includes a class of persons not mentioned in the title.

Article II, § 16 of the State Constitution, provides that no bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title. The objects and meaning of this provision have been discussed in a number of cases. It is de-

signed to prevent deception by provisions of which the title gives no intimation. *Monaghan v. Lewis*, 5 *Penn.* 218, 59 *A.* 948. While it is to be construed liberally in an effort to uphold legislation, liberality in construction should not be carried to an extreme that verges on emasculation. *Wilmington Trust Co. v. Highfield*, 4 *W. W. Harr.* 394, 153 *A.* 864. The body of a statute cannot be broader than the title indicates, 1 *Sutherland Statutory Construction* (3d. ed.) 314; and where the title expressly refers to a limited class, the body cannot validly include a larger class. Thus, where the title referred only to "malt beverages" and the body covered "all alcoholic beverages", a similar constitutional requirement was violated. *McCaffrey v. State*, 183 *Ga.* 827, 189 *S. E.* 825. The same was true where the title referred only to "public office", whereas the body covered "public employment". *O'Connor v. Roberson*, 125 *N. J. L.* 449, 15 *A.* 2d 764, affirming 123 *N. J. L.* 240, 8 *A.* 2d 603.

Still working under the assumption that the body of this Act was intended to include relator, let us analyze the title. It speaks of amending Chapter 78 of the *Revised Code* 1935, as amended. That chapter contains 199 sections, and deals exclusively with negotiable instruments, save for two provisions. One of these extraneous provisions requires schools and colleges to be closed on Election Day; the other requires schools to have appropriate ceremonies on Armistice Day. The only relation of subject matter between the present statute and Chapter 78 as it existed when this Act was adopted is found in 3321 Section 197, which listed certain days, such as Christmas, Thanksgiving, etc., as legal holidays within the meaning of the Negotiable Instruments Act. Certainly nothing in this part of the title puts an interested inquirer on notice that the Act makes the changes which relator suggests. We must, therefore, turn to the rest of the title for help.

The only conceivable part of the title which could possibly include relator is that part which mentions employees of agencies of the Levy Court. The truth is, however, that the Board of Trustees of the Workhouse is not an agency of the Levy Court.

It is an independent agency created by statute for the express purpose of managing the workhouse. Its officials are appointed, not by the Levy Court, but by certain Judges. Its operations and functions are in no way controlled by the Levy Court. Ch. 101, Art. 2, *Revised Code* 1935. It has exclusive jurisdiction over the operation of the workhouse and the employment of personnel. It is true that most, if not all, of its funds come from or through the Levy Court, but those funds are the subject of an annual appropriation, are paid over to the Board in monthly installments, and are spent by the Board according to its own discretion free of any right of interference by the Levy Court. Indeed, prior to the adoption of Ch. 202, Vol. 48, *Laws of Delaware*, page 573, it was held in one case that the Levy Court had no authority to reduce or question the annual budget demand of the Board, unless the items are unreasonable or excessive, or unless the Board acted in bad faith, or arbitrarily. *Trustees, etc. v. Levy Court, No.* 508 *Civil Action* 1950 (letter opinion).[1] This financial arrangement is the only connection between the two bodies. It does not make the Board an agency of the Levy Court, any more than numerous other organizations to which the Levy Court must appropriate funds, such as the Family Court, the Court of Common Pleas, certain hospitals, and the Children's Bureau.

■■ Question No. 4 as set forth in the statement of facts herein must be answered in the negative, because even if the Legislature intended to include relator in the body of the Act, the title does not do so and would thereby be deceptive in violation of the constitutional provision mentioned.

Another reason likewise impels the conclusion that the Act was not intended to include the workhouse guards. Discussion of this reason must be interwoven somewhat with the answer to question No. 5 as posed. No one would suggest that these guards were to receive the literal benefit of the statute; the presence of some of them at the Workhouse is necessary at all times.

---

[1]No opinion for publication.

An intention to include them within the Act can be inferred only if some benefit, other than this most obvious one, was intended to be conferred upon them. What other benefit is conferred? Relator suggests, of course, the intent to convert a six-day forty-eight hour workweek into a five-day forty-hour workweek. If such an important change were intended, it is reasonable to think that a more forthright method of saying so would have been followed, for it is not to be assumed that the Legislature would have expressed such a meaning either by using language so indirect or by amending the negotiable instruments law. The wording suggests nothing more than a design to make Saturday a legal holiday for those officials and employees mentioned; that is, to close those offices and give those people that day off from work; I find nothing in the Act indicative of a plan to alter salary terms for those persons who, by the very nature of their work, could not observe a holiday in this fashion; only by a strained construction which would practically amount to judicial legislation can the Act be considered a statutory upward modification of the salary schedule of any person. *Cf. Plummer v. Pennsylvania Railroad Co.*, 7 Cir., 37 F. 2d 874; *Schoonover v. City of Virogua*, 244 Wis. 615, 12 N. W. 2d 912.

There was no statutory bar to the creation of a five-day workweek by voluntary agreement between the guards and the Board even prior to the adoption of this Act. If at any time the Board had seen fit to agree to a change in the number of hours worked or in the schedule of wages, the situation before the Court would be entirely different. No such agreement was actually made, expressly or impliedly, during the period of relator's employment. The record shows that a new arrangement is now in effect under written agreements with the guards, but this change did not take place until relator's employment had ceased. In my view, the relator has demonstrated no right to recover additional compensation to that which he has already received.

Judgment will be entered for the respondents.