THE STATE OF DELAWARE, on the Relation of JOSEPH W. DAVIS, Appellant, v. JOHN A. WOOLLEY, ET AL., constituting and being members of the Board of Trustees of New Castle County Workhouse, and HERBERT BARNES, ET AL., constituting and being members of the Levy Court in and for New Castle County, Appellees.

(*May* 29, 1953)

SOUTHERLAND, Chief Justice, and WOLCOTT and TUNNELL, Justices, sitting.

*Stewart Lynch, Robert B. Walls, Jr., Florence E. Freeman* and *Alfred R. Fraczkowski* for Appellant.

*Clyde M. England, Jr.,* and *William S. Satterthwaite* for Appellees Herbert Barnes, et al., constituting the New Castle County Levy Court.

*Robert P. Barnett* for Appellees John A. Woolley, et al., constituting the Board of Trustees of the New Castle County Workhouse.

Supreme Court of the State of Delaware, No. 2, A. D. 1953.

TUNNELL, J.:

For some time prior to May 23, 1949, and thereafter until May 15, 1951, the relator, Joseph W. Davis, was employed as a guard at the New Castle County Workhouse. His contract of employment with the Trustees of the Workhouse was oral, but it was stipulated to have been in substance as follows:

"(a) that the workweek would be six days in each week; that he would work eight hours in each of such workdays, or a total of forty-eight hours per week;

"(b) that he would have one day off each week;

"(c) that all guards would work on so-called shift work, so that there would be guards on duty continuously in each twenty-four hours of a day;

"(d) that he would be paid a monthly salary of $214. per month, and that he would be paid semi-monthly;

"(e) that he would have a ten-day vacation, with full pay, after he had completed one year of service, and in each year thereafter;

"(f) that he would be paid in full for any time lost due to illness, with a limitation of fifteen days during the first year of his employment, and after such first year thirty days in any one year and less than five years of employment; and

"(g) that he would be compensated, on an hourly basis, for each hour or portion thereof that he worked in any week in

excess of the forty-eight hour workweek; and that the hourly compensation would be computed by dividing the total annual hours of 2,496 hours into his regular total annual or yearly salary."

For the duration of his employment the relator worked, and the Trustees paid him, according to the above-stated terms.

On May 23, 1940, an Act of the General Assembly, later published as *Chapter 143, Vol. 47, Laws of Delaware*, was approved by the Governor, the relevant text of the statute being as follows:

"The day of the week known as Saturday shall be a legal holiday for all elective and appointed officials, deputies, clerks, bailiffs, and other employees of New Castle County, including all officials and employees of the Levy Court of New Castle County and for all elective officials of the City of Wilmington and for all appointed officers and employees of 'The Mayor and Council of Wilmington' (except members of the Department of Public Safety and Firemen)."

Following the enactment of the above statute, relator made repeated demands upon the Trustees to be paid his full contractual salary in return for five days' work instead of six, and to be paid extra for the sixth day of work in any week in which he worked six days. Notwithstanding those demands, Trustees continued to require six days' service each week and to pay in accordance with the terms of the oral contract.

On June 8, 1949, the then Attorney-General of this State, pursuant to a request of the Trustees, rendered a formal opinion that the above statute applies to workhouse employees and makes it mandatory for the Trustees to declare Saturday a legal holiday in their institution.

Beginning on November 8, 1949, and continuing thereafter, the Trustees of the Workhouse, in all of the budget applications which they submitted to the New Castle County Levy Court, set up an item asking for various sums of money to cover the "in-

crease for salary budget to meet the costs of Saturday Holiday Law." On May 22, 1950, in a letter from the Trustees to the Levy Court, after referring to other matters, the subject of Saturday pay was alluded to in this fashion:

"* * * This, of course, does not include the possible liability of $24,000 for wages for Saturday work that we did not pay due to instructions from the Levy Court."

On May 23, 1950, the Levy Court, in a reply letter, followed up the Saturday holiday topic thus:

"We must take exception to the last sentence in your letter in which you state that you have a possible liability for wages for Saturday work that you did not pay due to instructions received from the Levy Court. You have never received instructions from the Levy Court nor have you ever invited instructions of any kind. You have been advised that the Levy Court has never recognized such a liability with respect to any employees working directly under the Levy Court and we do not recognize the possible liability which you mention."

The above excerpts from correspondence are fairly representative of all the direct dealings between the Trustees and the Levy Court on this subject.

The Levy Court never in fact appropriated funds with which to pay such overtime or extra wages, or, alternatively, with which to pay additional guards, during any period affected by this suit.

The Trustees, in February, 1951, applied to the newly elected Attorney-General for his opinion as to whether the above statute affected workhouse employees, and, if so, whether it was mandatory that Saturday be deemed a holiday. Under date of March 22, 1951, the Trustees received from the Attorney-General's office an opinion approving the opinion of the former Attorney-General as above noted.

On the 15th day of May, 1951, the relator left his employment at the workhouse and promptly petitioned[1] the Superior Court of New Castle County, praying in the alternative for a writ of mandamus to compel the Trustees of the Workhouse and the Levy Court commissioners to give him extra pay, or for a declaratory judgment determining his right to extra pay, covering all the instances between May 23, 1949—the effective date of the Saturday holiday act—and May 15, 1951—the date he left the workhouse—in which he had worked a sixth day in any workweek. By stipulation of counsel, the case was submitted to Judge Carey for determination upon the pleadings, certain documents which had been produced for inspection, and all the data which had been formally introduced into the record.

On December 5, 1952, in conformity with the opinion of Judge Carey, based in part at least upon a constitutional question arising out of the title of the act, the Superior Court entered judgment for the respondents and imposed costs upon the relator. From that judgment the relator has appealed.

Quantitatively, much of relator's argument before us, of course, deals with arguments against grounds stated in Judge Carey's opinion and the many additional matters urged by the respondents in opposition to the granting of any relief. His affirmative points, however, may be boiled down to these two propositions:

(1) *Chapter* 143, *Vol.* 47, *Laws of Delaware,* has the effect of establishing for workhouse guards a five-day week, and, therefore, the statute itself imposes upon the Trustees a clear obligation to pay their guards extra whenever they are required to work a sixth day in any week.

(2) If the first proposition fails, then, quite apart from the specific provisions of the Saturday holiday act, the conduct of

---

[1]For further details as to the petition, the facts, and the arguments of the respective parties, reference may be made to the opinion in this case below, 92 *A.* 2d 600.

the Trustees following enactment of the law had the effect of changing the terms of relator's employment (by implied contract, estoppel, or quasi-contract) so as to entitle him to recover extra pay for any week in which he worked more than five eight-hour days.

In obedience to the principle of law requiring a court to refrain from passing upon the constitutionality of a statute unless it must do so in order to decide its case, we decline to consider any of the constitutional questions raised in the briefs of counsel or discussed in the opinion of the court below. *Collison v. State*, 9 *W. W. Harr.* 460, 486, 2 *A.* 2d 97, 119 *A. L. R.* 1422.

Assuming—but certainly without intimating any views upon any of these matters—that the Saturday holiday statute is constitutional, that none but proper parties are joined, that the action is timely, that either mandamus or a declaratory judgment is formally appropriate, and that workhouse guards are within one of the classes of employees intended by the General Assembly to be affected by the statute,[2] we, nevertheless, find that relator has failed to make out a case based upon the statute itself.

Relator says that this statute, by making "the day of the week known as Saturday—a legal holiday" discloses a general legislative intent to create a five-day workweek for all employees it affects, and that it thus automatically amends any outstanding express contracts providing for a longer week. As a result, relator says, the workweek either has to be shortened in obedience to the statute, or the pay of the employees is thereby automatically increased.

The pay scale of a workhouse guard is not fixed by any statute; a statute confers upon the Trustees the discretion to determine whom to hire at the workhouse and what their re-

---

[2] All these questions have been raised by respondents. See Judge Carey's opinion below, 92 *A.* 2d 600.

spective rates of pay shall be. *Revised Code of Delaware,* 1935, Para. 4149 (11 *Del. C.,* Sec. 6721).

Nothing in this holiday statute deals with ordinary or overtime rates of pay or touches any question as to the power of any county agency to enter into a contract which will make it possible for the essential public services to be carried out on a holiday. We, therefore, fail to see where the statute and the contract come into collision. Sundays and such holidays as have long been recognized or officially proclaimed were given no special treatment in the contract. We fail to see why a newly created holiday, for the sole reason that it is new, should be treated differently from the older holidays. The express contract with relator and others in the same employment still required duty on six days of each week and for eight hours in each day. We agree with the learned judge of the lower court that if the legislature had intended to establish a five-day week in the face of contracts providing otherwise, it would certainly have employed a "more forthright method of saying so."

The question is not new. *United States v. Martin,* 94 *U. S.* 400, 24 *L. Ed.* 128, involved the effect of an act of Congress, June 25, 1868, 15 *Stat.* 77, declaring "That eight hours shall constitute a day's work for all laborers, workmen, and mechanics now employed * * * by or on behalf of the government of the United States". At the time the statute was enacted Martin was working for the government under an express contract requiring him to work a twelve-hour day and specifying two dollars and a half ($2.50) as his daily wage. After the statute was passed, he was still required to work twelve hours, and his pay was not increased. He sued for "arrearages" in pay analogous to the demands of this relator, but he ultimately lost his case. The Supreme Court found nothing in a statute defining the ordinary working day as consisting of eight hours which would affect a contract in which the parties expressly settled upon some different definition of a day's work.

To the same effect are *Plummer v. Pennsylvania R. R. Co.,* 7 *Cir.,* 37 *F.* 2d 874, and *Schoonover v. City of Viroqua,* 244 *Wis.*

615, 12 *N. W.* 2d 912. See also the editorial comment and collection of cases in *People v. Orange County Road Const. Co.,* 175 *N. Y.* 84, 67 *N. E.* 129, 65 *L. R. A.,* at page 46.

Two cases are relied upon as supporting relator's position. *City of Galveston v. O'Mara, Tex. Civ. App.,* 146 *S. W.* 2d 416, the first one, is fundamentally different from our case because Texas had a statute making it a crime for a city of Galveston's class to contract for or otherwise require a fireman to be on duty more than six days in any week. The second one, *O'Boyle v. Detroit,* 131 *Mich.* 15, 90 *N. W.* 669, is likewise distinguishable, for the majority opinion is based upon the specific premise that there was in their case no express contract stating hours of employment in excess of the statutory quota.

Accordingly, on reason and precedent, we conclude that the language of the statute itself fails to sustain relator's application.

This brings us to the second point. Did the conduct of the Trustees in the light of the statute either amend the contract or estop them from denying that it was amended?

In taking up this question, we deliberately pass over the earnest contention of respondents, supported by the opinion of the lower court, that relator did not make this argument below. Counsel for relator insist that they did make the argument. But in the view we take of the merits it is unnecessary to consider this formal objection. *Great American Indemnity Co. v. State. Del.,* 88 *A.* 2d 426.

It is not alleged that the Trustees, either themselves or by any warden or other agent, ever said or wrote anything to relator himself or to anyone acting in his behalf which could have been taken to be a promise or acknowledgment of any obligation in regard to this extra pay. The relator's several protests to the Trustees, so far as the record discloses, failed to elicit even the slightest acknowledgment—to him, at least—that they had ever been heard.

Relator, therefore, attempts to rely upon the "public knowledge" that the Trustees did request more money from the Levy Court for the purpose of providing this extra pay for Saturday work. It will be recalled that these "demands" upon the Levy Court for Saturday holiday money consisted of a succession of items in the proposed budgets of the Trustees, as explained in the correspondence passing between the two bodies.

The correspondence points out that the demands were distinctly contingent. It does not appear in the record whether the Trustees' action in putting these items into the budget was motivated by an eager hope or a grudging providence, nor does it appear to us that their motive could be important. The very quality of contingency which is so apparent in the record repels the theory of any agreement which could come into force unless the Trustees' demands for funds for the purpose should be fulfilled. That, as we saw, did not occur.

But this reasoning seems technical. A more fundamental fallacy in relator's argument is oversight of the distinction between a demand upon the Levy Court and a promise to relator. There has been a total failure to prove any sort of "holding out" to relator which could be construed as the basis of either an implied contract or an estoppel.

*Wisconsin & M. R. Co. v. Powers,* 191 *U. S.* 379, 24 *S. Ct.* 107, 108, 48 *L. Ed.* 229, involved reliance upon an act of the legislature, where our case involves alleged reliance upon items in a budget. A statute of Wisconsin provided an exemption of certain taxes for a period of ten years for the benefit of any railroad company which would thereafter build a railroad in that state. Plaintiff built a railroad, and Wisconsin proceeded to repeal the tax exemption. In deciding for the taxing authority, Mr. Justice Holmes, speaking for a unanimous court, said:

"The broad ground in a case like this is that, in view of the subject-matter, the legislature is not making promises, but framing a scheme of public revenue and public improvement. In announcing its policy, and providing for carrying it out, it may

open a chance for benefits to those who comply with its conditions, but it does not address them, and therefore, it makes no promise to them. It simply indicates a course of conduct to be pursued until circumstances or its views of policy change. It would be quite intolerable if parties not expressly addressed were to be allowed to set up a contract on the strength of their interest in, and action on the faith of, a statute, merely because their interest was obvious and their action likely, on the face of the law. What we have said is enough to show that in our opinion the plaintiff never had a contract, * * *."

We regard this reasoning as apposite.

Relator's entire factual showing can be fairly summarized as tending to prove that the relator continued to work for Trustees under the terms of his old contract, but in the hope and expectation that he would eventually get more money. His disappointment is understandable, but that does not make his claim enforceable.

Relator's reiterated demands upon the Trustees for more money, as referred to in our statement of facts, do no more than to negate the inference of waiver which might otherwise have arisen from his continuing to work for a succession of weekly checks which did not include any extra pay for the sixth day's work. A question of waiver is, of course, moot where there is no right to be waived in the first place.

We do not see how the opinions from the office of the Attorney-General, so strenuously urged upon us by relator, have any factual relevancy to the issues here decided. We regard them simply as legal opinions, and we have read them as we read other authorities.

On the brief and at the oral argument counsel for the relator sometimes used the expression "quasi-contract" in intimation of a doctrine conceived to support the contract or estoppel point presently under discussion. Since no money passed to the Trustees to cover the extra pay here involved, we are

somewhat at a loss as to how to treat this contention. Taking the term "quasi-contract" in its true[3] sense of an obligation implied by the law, and not based upon any agreement of the parties, it would appear to refer rather to relator's claim under the statute, a matter which we have already decided. If it relates to the second point at all, the expression must have been used loosely as referring to an agreement between the parties created otherwise than by an express contract, a situation which we have already seen was not here established.

Both relator's alternative grounds having failed, the judgment of the Superior Court must be affirmed.

[3]See *Trincia v. Testardi*, 30 *Del. Ch.* 182, 189-190, 57 *A.* 2d 638.