# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TEXAS ROADHOUSE MANAGEMENT CORP., *et al,* | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | C.A. No. N15C-08-215 CLS |
| DEPARTMENT OF LABOR, | ) ) ) | |
| Defendant. | ) ) ) ) | |

Date Submitted:  December 6, 2016
Date Decided:  March 30, 2017

On Plaintiffs' Motion for Summary Judgment **GRANTED**.
On Defendant Delaware Department of Labor's
Motion for Summary Judgment **DENIED.**

## OPINION

Elizabeth S. Fenton, Saul Ewing LLP, Wilmington, Delaware, Attorney for Plaintiffs, Texas Roadhouse et. al.

Oliver J. Cleary, Department of Justice, Wilmington, Delaware, Attorneys for Defendant, Department of Labor.

**SCOTT, J.**

Plaintiffs, Texas Roadhouse Management Corporation, Texas Roadhouse Holdings LLC, and Texas Roadhouse, Inc. (collectively "Texas Roadhouse") moved for summary judgment pursuant to Superior Court Civil Rule 56 on the issue of whether restaurant hosts are direct service employees within the meaning of 19 *Del. C.* § 902(d)(2) who may participate in a tip pool which allows the employer to take a tip credit toward the state minimum wage obligation. Defendant, Delaware Department of Labor (hereinafter "DDOL") moved for summary judgment pursuant to Superior Court Civil Rule 56 on the same issue.

## Background

### A. Procedural Posture and Stipulation of Facts

This action arises from Texas Roadhouse's Complaint for Declaratory Judgment pursuant to 10 *Del. C.* § 6501 filed with this court on August 27, 2015. On March 12, 2015 the Department of Labor sent a letter to the Texas Roadhouse restaurant in Middletown, Delaware contending that the restaurant improperly treated hosts and bus persons as tipped employees. Similarly, on March 27, 2015 the Department of Labor sent a letter to the Texas Roadhouse restaurant in Bear, Delaware, alleging the restaurant failed to pay full minimum wage to an employee who worked as a host or a bus person. On April 15, 2015 the Department of Labor sent a letter to the Texas Roadhouse restaurant in Camden, Delaware alleging the restaurant failed to pay full minimum wage to an employee who worked as a host.

Subsequently the Department of Labor issued an action in the Justice of the Peace Court in New Castle County to recover wages allegedly owed to three individuals employed as hosts at the Texas Roadhouse restaurant in Middletown, Delaware.[1] The Department of Labor alleged that the hosts at the Texas Roadhouse in Middletown were being paid at an hourly rate of $4.00 and improperly included in a tip pool. DDOL contended that the hosts should receive the minimum wage rate of $7.75 per hour because the hosts were improperly included in a tip pool. The Justice of the Peace Court found for the Department of Labor, and Texas Roadhouse appealed to the Court of Common Pleas. The appeal has been stayed upon joint motion of the parties in favor of this declaratory judgment action.

The parties stipulated to the following facts. Texas Roadhouse employs individuals in both "front house" and "back house" positions. The front house positions include bartenders, servers, server assistants, and hosts. The back house positions include cooks, expediters, and dish machine operators. The hosts are typically the first point of contact as guests enter Texas Roadhouse. Hosts greet guests, take the guests' names, and if there is a wait the host provides an estimate of wait time. The hosts inquire whether guests are visiting for the first time. If a guest is visiting for the first time, the host shares the "Texas Roadhouse Story," which includes a brief overview of the Company and a description of popular

_____

[1] Case No. JP13-15-006055

menu items. The host leads the guests past a display case on the way to the table, pointing out the featured cuts of steak. The host picks up a basket of fresh-baked bread and butter, serves the bread and butter to the guests as they are being seated. Hosts provide menus to the guests, and the host may take and deliver drink orders and otherwise address any guest requests. Once guests are seated, a server is primarily responsible for taking food and drink orders, entering orders into the system, delivering food and drink orders to the table, following up on additional guest requests, removing tableware as guests finish their meals, and collecting payment at the table. Server assistants help servers deliver food and drink orders, refill drinks, pre-bus tableware, complete the bussing of tables after guests leave, and preparing the table for the next guests. Hosts routinely assist with refilling guests' beverages and bread, and prebussing tableware when they walk through the dining area. Hosts are also called upon to run food to tables as needed to assist servers. For the period of time from December 17, 2014 through February 24, 2015, hosts were paid $4.00 per hour and received tips from a tip pool created by contributions from servers ("tip outs"). The hosts were engaged in occupations in which they customarily and regularly received more than $30.00 per month in tips from this tip pool, and servers did not contribute more than 15% of the tips they received to the tip pool. At all times relevant, the hosts' wages, when combined with the tips from the tip pool, equaled or exceeded the State minimum wage of

$7.75 per hour. Finally, neither Texas Roadhouse nor its managers took, received or retained any portion of the tips received by the employees.

**B. Delaware's Minimum Wage Rate Provision, 19 *Del. C.* § 902**

In order to assess the parties' contentions in this case, it is important to understand the construct of Delaware's Minimum Wage Rate provision at issue. The minimum wage provision 19 *Del. C.* § 902 provides that "every employer shall pay to every employee in any occupation of a rate" that is "not less than $7.75 per hour."[2] However, there is a statutory exception to this general rule. In situations where "gratuities received by employees engaged in occupations in which gratuities customarily constitute part of the remuneration," these gratuities "may be considered wages in an amount equal to the tip credit percentage . . . of the minimum rate" under 19 *Del. C.* § 902.[3] "An employee engaged in an occupation in which gratuities customarily constitute part of the remuneration shall be any worker engaged in any occupation in which workers customarily and regularly receive more than $30 per month in tips or gratuities."[4] When an employee falls into this provision under the minimum wage statute, the statute

---

[2] *See* 19 *Del. C.* § 902(a)(1). The parties stipulated that the hourly rate in effect at the time pertinent to this matter was $7.75 per hour.
[3] 19 *Del. C.* § 902(b).
[4] 19 *Del. C.* § 902(c)(1).

provides that the employee's minimum hourly rate shall not be "less than $2.23 per hour."[5] These employees are typically referred to as "tipped" employees.

The statute allows tipped employees, at their discretion, to "establish a system for the sharing or pooling of gratuities *among direct service employees*."[6] Generally, an employer cannot "in any fashion require or coerce employees to agree upon such a system"[7] because all "gratuities received by an employee, indicated on any receipt as a gratuity, or deposited in or about a place of business for direct services rendered by an employee is the sole property of the *primary direct service employee* and may not be taken by the employer."[8] However, the statute provides that "[w]here more than 1 *direct service employee* provides personal service to the same customer from whom gratuities are received, the employer may require that such employees establish a tip pooling or sharing system *not to exceed 15% of the primary direct service employee's gratuities*."[9] Gratuities are defined as "monetary contributions received directly or indirectly by an employee from a guest, patron or customer for services rendered where the

---

[5] 19 *Del. C.* § 902(b).
[6] 19 *Del. C.* § 902(d)(2)(emphasis added).
[7] 19 *Del. C.* § 902(d)(2).
[8] 19 *Del. C.* § 902(d)(1)(emphasis added).
[9] 19 *Del. C.* § 902(d)(2)(emphasis added). The parties stipulated that servers at Texas Roadhouse did not contribute more than 15% of the tips they received to the tip pool.

customer is entirely free to determine whether to make any payment at all, and if so, the amount."[10]

### Parties' Contentions

Both parties filed Motions for Summary Judgment with this Court and respective responses and replies. The parties stipulated to a set of facts (referred to as "stipulated facts") for the purposes of this action. The parties' contentions are summarized here. DDOL contends that Texas Roadhouse violated Delaware's Minimum Wage Rate statute by including restaurant hosts in the tip pool. Once these employees were included in a tip pool, Texas Roadhouse was able to apply a tip credit to their hourly wage rate pursuant to 19 *Del. C.* § 902(b). DDOL contends that the issue at bar is "whether the General Assembly intended for the DDOL to decide whether an employee is a primary direct service employee or whether that decision was entrusted to the employer." DDOL argues that Texas Roadhouse's tip sharing system diverts the gratuities, and thereby earnings, of the servers in violation of 19 *Del. C.* § 902(d)(1), and subsequently uses these gratuities to offset minimum wage obligations for hosts and hostesses. Texas Roadhouse contends that the only issue in the case is whether the restaurant hosts are considered "direct service employees" under 19 *Del. C.* § 902 and thereby

---

[10] 19 *Del. C.* § 902(c)(2). The parties stipulated that the terms "tip" or "tips" is intended to have the same meaning as "gratuities."

properly included in a tip pool. Thus, Texas Roadhouse argues it may apply a tip credit towards the hosts' hourly rate under Section 902(b).

## Standard of Review

The Court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."[11] The moving party bears the initial burden of showing that no material issues of fact are present.[12] Once such a showing is made, the burden shifts to the non-moving party to demonstrate that there are material issues of fact in dispute.[13] In considering a motion for summary judgment, the Court must view the record in a light most favorable to the non-moving party.[14] The Court will not grant summary judgment if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law.[15]

## Discussion

This is an issue of first impression in the Delaware courts, and the issue requires this Court to interpret 19 *Del. C.* § 902, Delaware's Minimum Wage Rate

---

[11] Super. Ct. Civ. R. 56(c); *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[12] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[13] *Id.* at 681.
[14] *Burkhart*, 602 A.2d at 59.
[15] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *Phillip-Postle v. BJ Prods., Inc.*, 2006 WL 1720073, at *1 (Del. Super. Ct. Apr. 26, 2006).

statute. The Court must "attempt to determine and give effect to the General Assembly's intent" when interpreting a statute.[16] The Court shall "give unambiguous statutory language its plain meaning 'unless the result is so absurd that it cannot be reasonably attributed to the legislature'."[17] If the Court determines that the language is ambiguous, the Court "'will resort to other sources, including relevant public policy,' to determine the statute's purpose."[18] "Ambiguity exists when a statute is capable of being reasonably interpreted in two or more different senses."[19]

## A. **The Justice of the Peace Court's Decision.**

The main issue in the case *sub judice* is whether the hosts at the Texas Roadhouse restaurants were wrongly included in a tip pool; subsequently allowing the restaurant to apply a tip credit toward the hosts' hourly minimum rate. The Court disagrees with the JP court's holding because it focused its rationale on the customers' considerations. The court found that Texas Roadhouse "did not present any evidence the hostess category of employee would be considered by a customer to receive tips on a regular and customary basis." There are two issues with this

---

[16] *Kelty v. State Farm Mut. Auto. Ins. Co.,* 73 A.3d 926, 929 (Del. 2013)(citations omitted).
[17] *Id.*
[18] *Id.* "One of the fundamental rules of statutory construction is that the words in a statute must be given their ordinary meaning. If the language is clear and unambiguous, courts may not interpret the statute to mean other than what it says." *Ross v. Dep't of Correction*, 697 A.2d 377, 378 (Del. 1997)(citations omitted).
[19] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 342 (Del. 2012)(citations omitted).

holding. First, the parties stipulated that hosts at the Texas Roadhouse restaurants customarily and regularly received more than $30.00 per month in tips, and the tips combined with their $4.00 hourly rate exceeded the state minimum wage of $7.75. Secondly, and more importantly, the statute does not indicate that the customer determines the tip standard under Section 902. In fact, the statute is unambiguous on this matter. All that is required under 19 *Del. C.* § 902(b) for an employer to apply a tip credit to the employee's hourly rate, and consequently pay the employee less than a minimum wage of $7.75 per hour, is that the individual is "engaged in an occupation in which workers customarily and regularly receive more than $30 per month in tips or gratuities."[20] In fact, Section 902 is entirely void of language suggesting that it is the customer who considers whether the employee customarily and regularly receives tips.[21] Further, the parties stipulated, and this Court agrees as a customary practice, that tips are entirely discretionary. Thus the only consideration of the customer under the plain reading of Section 902(b) is whether to provide a tip.[22] Arguably however, the customer's perception *is* relevant as to the identity of the "primary direct service employee." Section 902(c)(3) provides that a "primary direct service employee is one who in a given

---

[20] *See* 19 *Del. C.* §§ 902(b), (c)(1).
[21] *See* 19 *Del. C.* § 902.
[22] *See* 19 *Del. C.* § 902(c)(2)(stating that the "customer is entirely free to determine whether to make any payment at all and, if so, the amount").

situation performs the main direct service for a customer *and is to be considered the recipient of the gratuity*."[23]

Finally, the court also improperly focused on Defendant's lack of evidence that "the Delaware Code would include the hostess position as a *primary* direct service employee and be included in a tip pool." The court stated that the "[p]arties agreed the hostess category would provide direct service, but no evidence was presented as to whether the hostess is the *primary* service provider category in the customer's viewpoint." Although the plain reading of the statute seems to indicate that the identification of the primary direct service employee is the individual who provides the main direct service for a customer, and whom the customer considers as the recipient of gratuity,[24] one does not need to be considered a primary direct service employee to be included in a tip pool. Section 902(d)(2) provides that "[w]here more than 1 *direct service employee* provides *personal service* to the same customer from whom gratuities are received, the employer may require that such employees establish a tip pooling or sharing system not to exceed 15% of the *primary direct service employee's* gratuities."[25] Thus, a host *does not* need to be a primary direct service employee to be included in an employer initiated tip pool under Section 902(d)(2) as the court stated. Under

---

[23] *See* 19 *Del. C.* § 902(c)(3)(emphasis added).
[24] *See* 19 *Del. C.* § 902(c)(3).
[25] 19 *Del. C.* § 902(d)(2)(emphasis added).

the plain reading of the statute, a host need only be considered a *direct service employee* who provides *personal service to the same customer* for the employer to require the employee to share tips.[26] For the aforementioned reasons, this Court does not follow the JP court's findings.

## B. The Legislative History and Attorney General Opinions Regarding Delaware's Minimum Wage Statute.

The Court believes it is important to go through the history of Delaware's Minimum Wage provisions and the amendments pertinent to this litigation, as well as the relevant Attorney General Opinions. As approved March 30, 1965, the General Assembly amended Title 19 of the Delaware Code and added Chapter 9, the Minimum Wage chapter. Section 902(b) read:

> Every employer of an employee engaged in any occupation in which gratuities have customarily and usually constituted and have been recognized as part of the remuneration for hiring purposes shall be entitled on application to the Department to an allowance therefore in an amount that the Department shall determine by regulation to be necessary or appropriate to preserve or safeguard this minimum wage rate under this chapter.[27]

By June 28, 1968, the General Assembly approved an amendment to Section 902 that added provisions related to employees who customarily receive gratuities. This act struck Section 902(b) in its entirety and added that "[e]very employer shall pay wages to employees engaged in any occupation in which gratuities have

---

[26] *See* 19 *Del. C.* § 902(d)(2)(emphasis added).
[27] 55 Del. Laws. ch. 18, § 1 (1965).

customarily and usually constituted and have been recognized as part of the remuneration for hiring purposes at a rate of not less than" the fee schedule listed in the statute.[28] The amendment also provided that "[g]ratuities received by such employees engaged in occupations in which gratuities customarily constitute part of the remuneration may be considered wages for the purposes of this chapter to an amount not to exceed 50% of the applicable minimum rate as set forth in this subsection."[29] An "employee engaged in an occupation in which gratuities customarily constitute part of the remuneration shall be any worker engaged in an occupation in which workers customarily and regularly receive more than $20 per month in tips or gratuities."[30] On December 13, 1972, Mr. Franklin B. Drumheller of the Department of Labor requested that the Attorney General's Office issue an Opinion on two issues.[31] First, whether payments made by waiters to busboys constituted "gratuities" or "tips" to the busboys for purposes of defining "tipped employees" under 19 *Del. C.* § 901 of Delaware's Minimum Wage Law.[32] Second, whether busgirls and busboys were considered "tipped employees" under 19 *Del. C.* § 901.[33] David K. Brewster wrote the Attorney General Opinion, and

---

[28] 56 Del. Laws. ch. 339 (1968).
[29] *Id.*
[30] *Id.*
[31] Del. Op. Atty. Gen. 72-118.
[32] *Id.*
[33] *Id.*

answered both of Mr. Drumheller's questions in the affirmative.[34] The opinion stated that payments made by waitresses or waiters to busgirls or busboys are considered gratuities, and the busers are considered tipped employees under the statute if they customarily and regularly earn more than $20.00 per month in tips or gratuities.[35] The opinion acknowledged that "the problem arises because 19 *Del. C.* § 901(g) defines 'gratuities' as '. . . voluntary contributions received by an employee from a guest, patron or customer for services rendered'."[36] Thus, the opinion acknowledged that the definition "seems to exclude payments made by waiters (waitresses) to busgirls and busboys, since payment is not received directly from a guest, patron or customer."[37] However, the Attorney General's Office concluded that "the statute could logically be construed to include payment received indirectly since tip splitting is a well known practice, and it is not unreasonable to assume it is understood by guests, patrons or customers that while the tip is given to the waiter (waitress) it will be split with the busboys and busgirls."[38]

In 1983, the General Assembly struck Section 902 in its entirety. Pertinent to this litigation, the amendment changed the tip credit percent limit from 50% to

---

[34] *Id.*

[35] *Id.* 19 *Del. C.* § 902(b) at the time defined "tipped employees" as employees who "customarily and regularly receive more than $20 per month in tips or gratuities." *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at *1-*2.

33 1/3%, and added 902(c).[39]  Subsection (c) provided that "[a]ny gratuity received by an employee or indicated on any receipt as a gratuity is the property of that employee which may not be taken or retained by the employer except as permitted by state or federal law."[40]  Subsection (b) remained the same stating that "an employee engaged in an occupation in which gratuities customarily constitute part of the remuneration shall be any worker engaged in an occupation in which workers customarily and regularly receive more than $20 per month in tips or gratuities."[41]  Three years later, on February 24, 1986, the Department of Labor requested an opinion on a number of questions regarding mandatory tip-sharing.[42]  Former Judge, and State Solicitor at the time, Fred S. Silverman, wrote the Opinion for the Attorney General's Office.[43]  The opinion states that 19 *Del. C.* § 902(c) intended to "prohibit mandatory tip-sharing."[44]  The Attorney General's Office noted that tip-splitting was a well-known practice, and Federal law at the time allowed "the practices of tip-splitting and tip-pooling and provide[d] specific regulatory requirements."[45]  The Opinion explained that "19 *Del. C.* § 902(c) was enacted to prevent employers from requiring tip sharing."[46]

---

[39] 64 Del. Laws. ch. 84, § 1 (1983).
[40] *Id.*
[41] *Id.*
[42] Del. Op. Atty. Gen. 86-I002, 1986 WL 191934.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*

Consequently, on July 3, 1986, an amendment to the Minimum Wage Act was approved.[47] Section 902, once again, was struck in its entirety, and the current statute is a reflection of this change. Section 902(b) read "[g]ratuities received by employees engaged in occupations which gratuities customarily constitute part of the remuneration may be considered wages for the purposes of this Chapter in amount not to exceed 33 1/3% of the minimum rate."[48] Section 902(c) defined an employee engaged in an occupation in which gratuities customarily constitute part of the remuneration as "any worker engaged in an occupation in which workers customarily and regularly receive more than $30 per month in tips or gratuities."[49] The amendment re-defined gratuities as "monetary contributions received directly or indirectly by an employee from a guest, patron, or customer for services rendered."[50] Most notably, this amendment added Section 902(d) which provided that "[e]mployees may establish a system for the sharing or pooling of gratuities among direct service employees," and "[w]here more than one direct service employee provides personal service to the same customer from who gratuities are received, the employer may require that such employees establish a tip pooling or sharing system not to exceed 15% of the primary direct service employee's

---

[47] 65 Del. Laws, ch. 436, §1 (1986).
[48] *Id.*
[49] *Id.*
[50] *Id.*

gratuities."[51]   Thus, only a few months after the February 1986 Attorney General Opinion on mandatory tip-splitting, the General Assembly enacted an entirely new Minimum Wage Act which *allowed* for an employer mandated tip-splitting.   This section still exists today.   On July 20, 1989, another amendment to the Minimum Wage Rate statute was approved.[52]   Section 902(a) was struck in its entirety, and section 902(b) changed the tip credit percent of 33 1/3% and replaced it with "equal to the tip percentage, as set by the federal government."[53]

## C. **The Federal Labor Standards Act.**

 Delaware's Minimum Wage Rate statute has similar language to the Federal Labor Standard Acts ("FLSA").   Under 29 U.S.C. § 203(m) permits "employers to pay less than minimum wage to employees who receive tips"[54] so long as the employee is considered a "tipped employee."[55] The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips'."[56] Delaware's § 902 mirrors this definition.   Similarly, under FLSA "[t]ips received from a tip pool are counted

---

[51] *Id.*

[52] 67 Del. Laws, ch. 141 § 1, 3, 4 (1989).

[53] *Id.* The Court notes that other amendments to this section of the Minimum Wage statute were approved, but these amendments related to the numerical value of the minimum wage rate or language not pending before the Court.

[54] *Wajcman v. Inv. Corp. of Palm Beach*, 2008 WL 783741, at *2 (S.D. Fla. Mar. 20, 2008); *see also* 29 U.S.C. § 203(m).

[55] *Id.*

[56] *Howard v. Second Chance Jai Alai LLC*, 2016 WL 7180243, at *18 (M.D. Fla. Dec. 9, 2016);*see also* 29 U.S.C. §203 (t).

as 'received tips' to establish whether an employee is customarily and regularly tipped."[57]    It is established that when computing the "$30/month statutory threshold calculation, it is not necessary that the employee receive the tips directly from the customer" because the "tips received from a tip pool may properly be included in the calculation."[58]    The *Wajcman* court noted that "[i]n determining whether an employee is engaged in an occupation that 'customarily and regularly' receives tips for purposes of § 203(t), the focus is properly drawn to the question of whether the employee performs important customer service functions, i.e. does the employee have more than *de minimis* service interaction with customers."[59]    It is also the employer's burden to prove whether an "employee is eligible to participate in a tip pool."[60] The mere fact that an individual is "part of a group which has a record of receiving more than $30 a month in tips will not qualify" them as a tipped employee.[61]

---

[57] *Id.* (citing 29 C.F.R. § 531.54).

[58] *Wajcman*, 2008 WL 783741, at *2 (citing 29 C.F.R. § 531.54)("Where employees practice tip splitting, as where waiters give a portion of their tips to busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals  who retain them, in applying the provisions of section 3(m) and 3(t).").

[59] *Id.* at *3 (citing *Kilgore v. outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998)). *See also Pedigo v. Austin Rumba, Inc.,* 722 F.Supp.2d 714, 730 (W.D. Tex. 2010)(Determining "an employee's eligibility to participate in a tip pool requires an *ad hoc* analysis of an employee's duties, rather than a *per se* determination based upon an employee's job title.")).

[60] *Conners v. Catfish Pies, Inc.*, 2015 WL 632236, at *2 (E.D. Ark. Feb. 13, 2015)(citing *Roussell v. Brinker Int'l, Inc.,* 441 Fed.Appx. 222, 230 (5th Cir. 2011).

[61] *See* 29 C.F.R. § 531.56(c)("For example, a waitress who is newly hired will not be considered a tipped employee merely because the other waitresses in the establishment receive tips in the requisite amount."); *see also Howard,* 2016 WL 7180243, at * 18 (stating that "[a]n employee, however, cannot become eligible for tip sharing simply by taking money from a tip pool.").

The Sixth Circuit dealt with a very similar issue to the case before this Court. In *Kilgore*, plaintiffs sued Outback Steakhouse claiming that Outback Steakhouse violated the FLSA because the restaurant wrongfully applied a tip credit toward hosts' minimum hourly rate when hosts, servers, and bartenders participated in a tip pool.[62] Plaintiffs argued that including hosts in the tip pool "would allow Outback and other employees to designate any of its employees as tipped employees, and then use a tip credit against the employer's minimum wage obligations."[63] The court ultimately found that plaintiffs' argument failed under FSLA because it "is limited by the subsection 203(t) requirement that an employee work 'in an occupation in which he customarily and regularly . . . receives tips'."[64] The court held that hosts at Outback were engaged in an occupation which they customarily and regularly received tips.[65] The court reasoned that the hosts "sufficiently interact[ed] with customers in an industry (restaurant) where undesignated tips are common," and "hosts do perform important customer service functions."[66] The hosts are "not the primary customer contact but they do have more than de minimis interaction with the customers."[67] Further, The United States Department of Labor Field Operations Handbook provides examples of

[62] *See Kilgore v. Outback Steakhouse of Florida, Inc*, 160 F.3d 294 (6th Cir. 1998).
[63] *Id.* at 301.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.* The Sixth Circuit noted that the hosts at Outback "greet customers, supply them with menus, seat them at tables, and occasionally 'enhance the wait'." *Id.*

occupations recognized as "those in which employees customarily and regularly receive tips."[68] The list includes, waiters/waitresses, counter personnel who serve customers, bellhops, bussers, and service bartenders.[69] Further, the list in the handbook references WHD Opinion Letters that included the following occupations: sushi chefs "who are similar to counter personnel because they have direct contact and interact with customers and prepare and serve meals to customers in the bar area or customer tables," barbacks that are parallel to bussers, and sommeliers that "explain the wine list, bring the selected bottle of wine to the table, and serve the wine to the customers."[70] The Field Operations Handbook also contains a list of individuals who may not be placed in the mandatory tip pool: janitors, chefs or cooks, dishwashers, laundry room attendants, salad prepares, and prep cooks.[71]

### D. The Superior Court's Interpretation of 19 *Del. C.* § 902, Delaware's Minimum Wage Rate Statute.

In light of the discussion above, the Court now must determine whether Texas Roadhouse hosts are direct service employees who provide personal service to customers under Delaware's Minimum Wage statute. This is an issue of first impression in this State. In Delaware, the Court "must first determine whether a

---

[68] U.S. DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK, Chapter 30, § 30d04(b) (Oct. 31, 2016), https://www.dol.gov/whd/FOH/FOH_Ch30.pdf.
[69] *Id.*
[70] *Id.*
[71] *Id.* at § 30d04(f).

statute is ambiguous" when construing a statute.[72]  Ambiguity exists if the statute "is susceptible of two or more reasonable interpretations, or if a literal reading of the statutory language 'would lead to an unreasonable or absurd result not contemplated by the legislature.'"[73]  Where "the intent is clear from the language of the statute, there is no room for statutory interpretation or construction."[74]  Where a statute is "ambiguous, 'we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole'."[75]  As stated in the prior section of this opinion, the statute unambiguously permits employers to create a mandatory tip sharing system, which was added to this Chapter in 1986.  Typically, once an employee receives a tip from a customer, the statute provides that this tip is the sole property of the primary direct service employee, except in one situation: where more than one direct service employee provides personal service to a customer.[76]  In this situation the employer may require a tip sharing system under Section 902(d)(2).  The statute allows an employer to implement a tip sharing system, and it also provides that the employees themselves may establish a system for sharing tips among "direct

---

[72] *City of Wilmington v. Nationwide Insurance Co.*, 2017 WL 34895, at *4 (Del. Jan. 4, 2017)(citing *Lawson v. State*, 91 A.3d 544, 549 (Del. 2014)).

[73] *Id.*

[74] *Id.* (citing *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982)).

[75] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012)(quoting *Taylor v. Diamond State Port Corp.,* 14 A.3d 536, 538 (Del. 2011)).

[76] *See* 19 *Del. C.* § 902(d)(2).

service employees."[77]   The statute does not define "direct service employee" nor "personal service." Texas Roadhouse argues that the hosts were correctly included in the restaurant tip pool as direct service employees. Texas Roadhouse contends that this conclusion can be drawn from the statute itself as well as the 1972 Attorney General's Opinion.

Under the definitions of terms in Chapter 9 of Title 19, "gratuities" means "voluntary monetary contributions received by an employee from a guest, patron or customer for services rendered."[78]   However, Section 902(c)(2) defines gratuities as "monetary contributions received directly or indirectly by an employee from a guest, patron or customer for services rendered."[79]   Texas Roadhouse argues that the language "*directly or indirectly*" in the Section 902 definition of gratuities is a reference to the tip sharing system established in the statute. The Court agrees with this argument. As evidenced by the Attorney General's December 1972 Opinion discussed above, the opinion stated that "it is not unreasonable to assume that it is understood by guests, patrons or customers that while the tip is given to the waiter (waitress) it will be split with the busboys and busgirls."  Similarly, the 1986 amendment reflects this theory as the amendment changed the definition of gratuities and added the words "received

---

[77] *Id.*
[78] 19 *Del. C.* § 901(5).
[79] 19 *Del. C.* § 902(c)(2).

directly or indirectly" to the definition of gratuities under § 902(c)(2).  Although the Court only considers this opinion as persuasive authority, the opinion provides guidance and defines the policies of the Attorney General's Office.[80]  When reading the statute as a whole, it can be interpreted that a direct service employee may receive a tip indirectly, such as through tip sharing with the primary direct service employee, to be considered a gratuity within the parameters of the statute. DDOL does not seem to take issue with the employee initiated tip sharing system, even though from the plain reading of the statute the employer would still be able to apply a tip credit.[81]

DDOL's argument is that Texas Roadhouse merely found a loophole in the statute to bypass the minimum wage requirement by involuntarily including hosts in a tip sharing system.  The Court notes that Texas Roadhouse's tip pool is compliant with the Delaware Minimum Wage Rate provisions.  The parties stipulated that Texas Roadhouse, nor their managers, receive a portion from the gratuities, and the amount contributed to the tip pool does not exceed 15% of the servers' tips.[82]  DDOL argues that Texas Roadhouse does not have the authority to

---

[80] *See Council 81, Am. Federation of State, County and Municipal Emp., AFL-CIO v. State, Dept. of Finance*, 288 A.2d 453, 455 (Del. Ch. 1972)("The statutory language connotes that an opinion of the Attorney General is advisory and thus not binding on those to whom it is given."); *see also* 29 *Del. C.* § 2504; *State ex rel. Davis v. Woolley*, 97 A.2d 239, 244 (Del. 1953)(Attorney General Opinions are regarded "simply as legal opinions," and the court "read[s] them as we read other authorities.").
[81] *See* 19 *Del. C.* § 902(d), (b).
[82] *See* 19 *Del. C.* § 902(d)(2).

take gratuities from a sever because under 19 *Del. C.* § 902(d)(1) tips are the sole property of the *primary direct service employee*.[83] Although tips are the exclusive property of the primary direct service employee, Section 902(d)(2) provides otherwise.[84] For an employee to be included in a "tip pool," the statute unambiguously states that when "more than 1 *direct service employee* provides personal service to the same customer from whom gratuities are received, *the employer may require* that such employees establish a tip pooling or sharing system not to exceed 15% of the *primary direct service employee's* gratuities."[85] Thus, the plain reading of the statute indicates that it is at the employer's discretion to create a tip sharing system when "more than 1 *direct service employee* provides personal service to the same customer."[86] DDOL's loophole argument is essentially two fold. First, DDOL essentially argues that hosts do not customarily and regularly receive tips without this mandatory tip pool. Thus, they are not engaged in an occupation which workers "customarily and regularly" receive tips. Second, DDOL's opening brief suggests that this type of tip-sharing system allows the employer to decide who is assigned to the tip pool, and any type of employee who provides some form of service to a customer may be included in a tip pool. Although the Court is sensitive to DDOL's "slippery slope" theory, the Delaware

---

[83] *See* 19 *Del. C.* § 902(d)(1)(emphasis added).
[84] *See* 19 *Del. C.* § 902(d)(2).
[85] 19 *Del. C.* § 902(d)(2) (emphasis added).
[86] 19 *Del. C.* § 902(d)(2)(emphasis added).

wage rate statute limits tip sharing to *direct service employees who provide personal service* to the same customer as the primary direct service employee.[87] This State's statute is therefore different than the FLSA which does not distinguish between direct service employees and primary direct service employees, and the primary analysis under FLSA is whether an employee is engaged in an occupation where they customarily and regularly receives tips. On this issue, the U.S. DOL's Handbook does not specifically include hosts on the list of employees who may not participate in a mandatory tip pool.[88]   Similarly, the Kilgore court held that under the FLSA hosts were considered tipped employees under this federal standard. Thus the Court does not find DDOL's argument persuasive, and finds that the main issue before the Court is whether the Texas Roadhouse employees at issue are considered "direct service employees" under Section 902(d)(2).

The term "direct service employee" is not defined in 19 *Del. C.* § 902. However, the statute defines *primary direct service* employee as "one who in a given situation performs the main direct service for a customer and is to be considered the recipient of the gratuity."[89]  This Court finds hosts at the Delaware Texas Roadhouse restaurants perform duties sufficient to qualify as *direct service employees*.  Here, Texas Roadhouse hosts perform direct personal services to the

---

[87] *See* 19 *Del. C.* § 902(d)(2).

[88] U.S. DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK, Chapter 30, § 30d04(f) (Oct. 31, 2016), https://www.dol.gov/whd/FOH/FOH_Ch30.pdf.

[89] 19 *Del. C.* § 902(c)(3).

guests at the restaurants, including the following services which are stipulated facts. Hosts are the first point of contact for guests when they enter a Texas Roadhouse restaurant. Once a table is available the host leads the guests to their table and asks whether the guests have been to the restaurant before. If a guest has not been to the restaurant before the host shares the "Texas Roadhouse Story." The host leads guests past a display case and informs the customers of the featured cuts of steak. Hosts pick up baskets of bread and serve the bread to the guests as they are seated at their table. Hosts provide guests with menus and may take and deliver drink orders. After guests are seated, servers are primarily responsible for taking food and drink orders, putting the orders into the computer, delivering food and drink orders, following up with guests, and collecting payment at the table. However, hosts may also assist the servers in removing tableware as guests finish their meals (referred to as "prebussing"), and are called to run food to tables when servers need assistance. Although the hosts may not be the primary direct service employee who receives the gratuity from the customer, the hosts' tasks provide personal direct service to the customers. This Court finds that under 19 *Del. C.* § 902 the hosts at the Texas Roadhouse restaurants are direct service employees and were properly included in the mandatory tip pool. The Court notes, as it discussed at oral argument, that it is the Department who has the authority under 19 *Del. C.* § 904 to "make and revise or rescind such regulations, including the definition of

terms, as it may deem necessary or appropriate to preserve or safeguard the minimum wage rate under this chapter."[90]  If the definitions are hazy, it is the Department's responsibility to provide regulations that define which employees are included in the tip pool.  The Court's function is to interpret the law, not to promulgate.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED**, and Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**

---

[90] *See* 19 *Del. C.* § 904(a).